MARK W.S. Young
4870 127th TRL N
West Palm Beach, FL 33411
(561) 719-1250
cc:som

ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

AUG 26 2009

at 3 o'clock and 40 min. P M
SUE BEITIA, CLERK

## IN THE UNITED STATES DISTRICT COURT FOR THE

## DISTRICT OF HAWAII

| | |
|---|---|
| **Mark W.S. Young** | **CIVIL ACTION NO.** CV09 00403 SOM |
| **Plaintiff** | KSC |
| **VS.** | COMPLAINT; DEMAND FOR JURY TRIAL; EXHIBITS 1-14; SUMMONS |
| **Bishop Estate / Kamehameha Schools, Robert Bruce Graham, Ashford & Wriston, LLP, James Francis Vrechek, Corbett A.K. Kalama, Diane J. Plotts, J. Douglas Keauhou Ing, Nainoa Thompson, Robert K. U. Kihune, Jason Tani, Frank Kanemitsu, Ronald R. Sakamoto, Colleen K. Hirai, And John Does #1 To 100** | |
| **Defendants.** | |

## COMPLAINT

**COMES NOW, Mark WS Young, ("Plaintiff")** and files his **Complaint.**

### DEMAND FOR JURY TRIAL

Plaintiff, **Mark W.S. Young**, asserts his rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with *Federal Rule of Civil Procedure 38*, a trial by jury on all issues.

### A. PARTIES

1. Plaintiff, **MARK YOUNG**, sues as an individual and is a citizen of the State of Florida.

2. Defendant, **BISHOP ESTATE / KAMEHAMEHA SCHOOLS ("Bishop Estate")**, is a charitable trust that is organized under the laws of the State of Hawaii. Defendant has its principal place of business in the State of Hawaii and may be served with process at 567 South King St. #310, Honolulu, Hawaii 96813.

3. Defendant, **ROBERT BRUCE GRAHAM ("Graham")**, is a citizen of the State of Hawaii and is sued as an individual and a shareholder of Ashford & Wriston, LLP and may be served with process at 1099 Alakea St, Suite 1400, Honolulu, Hawaii 96813

4. Defendant, **ASHFORD & WRISTON, LLP** is a Limited Liability Partnership incorporated under the laws of the State of Hawaii and may be served process on CUYLER E. SHAW as agent at 1099 Alakea St, Suite 1400, Honolulu, Hawaii 96813

5. Defendant, **JAMES FRANCIS VRECHEK,** is a citizen of the State of Hawaii and is sued as an individual and may be served with process at 700 Richards St #2605, Honolulu, HI 96813.

6. Defendant, **CORBETT A.K. KALAMA** is a citizen of the State of Hawaii and is sued as an individual and as a trustee of Bishop Estate and may be served with process at 567 South King St., Honolulu, Hawaii 96813.

7. Defendant, **DIANE J. PLOTTS** is a citizen of the State of Hawaii and is sued as an individual and as a trustee of Bishop Estate and may be served with process at 567 South King ST., Honolulu, Hawaii 96813.

8. Defendant, **J. DOUGLAS KEAUHOU ING** is a citizen of the State of Hawaii and is sued as an individual and as a trustee of Bishop Estate and may be served with process at 567 South King St, Honolulu, Hawaii 96813.

9. Defendant, **NAINOA THOMPSON** is a citizen of the State of Hawaii and is sued as an individual and as a trustee of Bishop Estate and may be served with process at 567 South King St, Honolulu, Hawaii 96813.

10. Defendant, **ROBERT K. U. KIHUNE,** is a citizen of the State of Hawaii and is sued as an individual and as a trustee of Bishop Estate and may be served with process at 567 South King St, Honolulu, Hawaii 96813.

11. Defendant, **JASON TANI,** is a citizen of the State of Hawaii and is sued as an individual and may be served with process at Rush Moore, LLP, 737 Bishop St, Suite 2400, Honolulu, HI 96813.

12. Defendant, **FRANK KANEMITSU** is a citizen of the State of Hawaii and is sued as an individual and may be served with process at RINESMITH & SEKIGUICHI, 737 Bishop St #2775, Honolulu, HI 96813.

13. Defendant, **RONALD R. SAKAMOTO** is a citizen of the State of Hawaii and is sued as an individual and may be served with process at Char, Sakamoto, 841 Bishop St #850, Honolulu, HI 96813.

14. Defendant, **COLLEEN K. HIRAI** is a citizen of the State of Hawaii and is sued as an individual and may be served with process at Circuit Court, 777 Punchbowl St, Honolulu HI 96813.

15. Defendant, **JOHN DOES #1 to #100**, as individuals.

16. Each of the above is a **"Defendant"** and collectively the "**Defendants.**"

17. The term FRANK KANEMITSU, JASON TANI, RONALD R. SAKAMOTO, and ROBERT BRUCE GRAHAM are collectively the **"Attorneys"**

## B. JURISDICTION

18. The court has jurisdiction over the lawsuit because the suit arises under *15 U.S.C. § 15* (antitrust violations), *18 USCS § 1964 (Civil RICO) for* violations of *18 USCS § 1962 and 18 USCS § 1341(mail fraud).*

19. On faith and belief, one or more of the Defendants utilized the instrumentalities of interstate commerce during the relevant period. Instruments of interstate commerce include, but are not limited to US Postal Service, telephone, email, fax, internet, a public road funded by federal money.

## C. VENUE

20. Venue is proper pursuant to *15 U.S.C. § 15* , *18 USCS § 1965* and other federal laws because one or more of the defendants reside, is found, or has an agent in this Court's jurisdiction.

## D. CONDITIONS PRECEDENT

21. All conditions precedent have been performed or have occurred.

## E. FACTS

22. Bishop Estate, a charitable trust, was formed by a childless Hawaiian Princess who gifted about 9 percent of the lands of Hawaii to form a preparatory school known as Kamehameha schools.  As the value of the land in Hawaii increased, so did the value of the Bishop Estate.

23. Organized crime infiltrated Bishop Estate for the purpose of embezzling and misappropriating the estate's assets through excessive compensation and awarding no-bid contracts with the estate to themselves, members of organized crime, and their cronies.  The term organized crime refers to people working together to violate the law for profit.

24. Bishop Estate's corruption became so great that a sitting US District Court Judge, Samual King co-authored a book called *"Broken Trust: Greed, Mismanagement & Political Manipulation at America's Largest Charitable Trust."* (**"Broken Trust"**) **Broken Trust documented the corruption of Bishop Estate and the state judiciary.**

25. The testamentary will specified that the Hawaii Supreme Court would appoint replacement trustees.  This became a corrupting influence on the state judiciary system because politicians appointed the state Supreme Court justices.  During the

interview for prospective Hawaii Supreme Court justices, one of the test questions became: who would a judicial candidate appoint as a replacement trustee to Bishop Estate. If the judicial candidate gave the wrong answer (not specify a political insider to be trustee), the judicial candidate would not get the job. *Broken Trust page 154.* As a result, political insiders became replacement Bishop Estate trustees.

26. Organized crime used Bishop Estate's wealth and power for:

    a.  Retaliating against law enforcement (fired the state attorney general during an investigation),

    b.  Witness intimidation,

    c.  Retaliating against whistle blowers,

    d.  Unlawful lobbying of elected officials, and

    e.  Improper influence of state judges (the state Supreme Court dismissed criminal charges against the head of this organization without determining whether a crime was committed and chastised the state attorney general for bringing the charges.)

27. **Witness Intimidation:** Bishop Estate has a history of witness intimidation. Bishop Estate trustees' ordered **Laurian Childers** to destroy evidence to thwart a criminal investigation. Even with armed guards protecting her, Lauren decided to sell her house and move away from Hawaii rather than to testify and face Bishop Estate's retaliation. *See Broken Trust, page 186-187.* Bishop Estate trustee's even resorted to extortion of Kamehameha students, the beneficiaries of Bishop Estate. *Broken Trust page 128-129*

28. **Whistle Blower Retaliation:** Bishop Estate has a reputation of punishing whistle blowers such as **Bobby Harmon**, who reported Bishop Estate accounting irregularities to Bishop Estate's outside auditors. *See Broken Trust, page 203-206.*

Within a month, Bobby Harmon was terminated and hit with and injunction which forbade him from discussing his termination with anyone.  Harmon lost his savings, his home, had to declare bankruptcy, and move away from Hawaii because he blew the whistle on Bishop Estate.

29. **Unlawful lobbying of elected officials:**   Bishop Estate's unlawful lobbying of elected officials resulted in the IRS revoking Bishop Estate's tax exempt status and triggering an estimated $1 billion in back taxes. *Broken Trust, page 254.*

30. The Bishop Estate trustees kept giving themselves raises.  Bishop Estate went unchecked for a very long time.  Bishop Estate made illegal political contributions, so the IRS revoked Bishop Estate's tax exempt status, which triggered back taxes estimated to be $1 billion.  When the IRS revoked Bishop Estate's tax exempt status and refused to deal with Bishop Estate unless the trustees were removed, the governor requested the State Attorney General investigate the matter.



"Circle of Influence"

31. When the State Attorney General Margery Bronster investigated and prosecuted organized crime in Bishop Estate, organized crime used Bishop Estate's political muscle and fired the state attorney general.

32. The organized crime entity has strong connections to the Hawaii Judiciary – the Hawaii Supreme Court dismissed the charges against the organized crime heads without determining whether any crime had been created and ruled no new charges could be brought.   The Supreme Court went further and chastised the Attorney General's Office for bringing the charges (the Attorney General had already been fired). *Broken Trust, p. 279-280.*   The Attorney General was fired and the Attorney General's office was chastised for trying to prosecute organized crime – organized crime won.

33. **The cost of the corruption of Bishop Estate is estimated at $47.5 Billion.**   The cost of this fraud is simple to calculate.   In 1995, Bishop Estate was worth $10 billion at the time larger than the combined endowments of both Harvard and Yale Universities. *Broken Trust, page 1.*   In 2009, with proper investment management and stewardship, Harvard's endowment grew to $34 billion and Yale's endowment grew to $22.5 billion. *Exhibits 8 and 9, The Boston Globe and Yale University Office of Public Affairs.*   In comparison, due to corruption and mismanagement, Bishop Estate was worth about $9 billion in 2008. *Exhibit 10, Kamehameha Schools Financial Summary.*   The combined endowments of Yale and Harvard became $56.5 billion.   If Bishop Estate had been managed the same as Yale and Harvard, Bishop Estate would be worth about $56.5 billion.   The difference:  $56.5 billion – $9 billion = $47.5 billion.

34. According to Kamehameha School's website, the Bishop Estate decreased to $6.2 billion in 2009. *Exhibit 14.*

35. To placate the IRS and avoid the estimated $1 billion in back taxes, the replacement trustees promised the IRS a thorough house-cleaning of Bishop Estate.   However, the replacement Bishop Estate trustees hired the same law firms that had argued that the former trustees did nothing wrong and hindered the attorney general's invest and had misguided Bishop Estate.   In essence, the heads of the organize crime entity were replaced, but the rest of the organized crime enterprise remained intact.

36. On faith and belief, Bishop Estate failed to abide by all of the requirements of IRS 5701 form and 2,500 pages of attachments that lead to loss of Bishop Estate's tax exempt status, which triggered an estimated $1 billion in back taxes.


**SHARON MARIE YUST YOUNG REVOCABLE LIVING TRUST**

37. Sharon Marie Yust Young created a Trust known as the Sharon Marie Yust Young Revocable Living Trust in Hawaii with about $1.2 million in assets.   Sharon Young appointed her CPA to be the trustee.   Sharon Young contracted terminal lung cancer and went to hospice for her final days.   While Sharon Young was on narcotic pain killers in hospice, an attorney with no prior knowledge of Sharon Young's estate plan came to her deathbed regifted $485,000 to various religious advisors and extended the period of distribution to her children by 5 years.   Sharon Young had two children: Keith Young and Mark Young (Plaintiff).   At the time, Sharon Young believed light was oozing from her eyes and she was so out of her mind that she signed two different names on the same document.   *Exhibit 11.*

38. This included a $425,000 gift to the Hawaii Sat Sang Society, which is the local branch of the Eckankar Church.   The Eckankar Church, a religion that although founded in the 1970's claims to predate all religions and that all religions arise from Eckankar.   Eckankar teaches that its leader, a man living in Minnesota, has the power to create or destroy nations with the flick of his finger.

39. Trustees are required to be of the highest moral character to prevent embezzlement of trust funds. After Sharon Young's death it was discovered that the James Francis Vrechek (Sharon Young's CPA and trustee) falsified having a CPA license. James Francis Vrechek had used letterhead stating, "James F. Vrechek, CPA."

40. It was learned that Vrechek worked as a controller for a car dealership, where he materially falsified financial statements for about 1.5 years to conceal massive losses. Vrechek also kited checks to conceal the fraud. Vrechek also lied to auditors to further conceal the fraud. These are very strong instances of dishonesty and moral turpitude, which justify removal of a trustee.

41. A reasonable prudent person with full knowledge of Vrechek's history would not trust Vrechek with unsupervised access to their life savings.

42. The Sharon Marie Yust Young Trust was domiciled in Honolulu on the island of Oahu. All of the trusts on the island of Oahu in Hawaii go before one judge: Colleen K. Hirai.

43. Robert Bruce Graham is the attorney and agent for Bishop Estate and its trustees: Corbett A.K. Kalama, Diane J. Plotts, J. Douglas Keauhou Ing, Nainoa Thompson, Robert K. U. Kihune (collectively the **"Bishop Estate Trustees"**).

44. As attorney in fact and agent for the Bishop Estate Trustees, the Bishop Estate Trustees are vicariously liable for Robert Bruce Graham acts and omissions within the scope of his agency.

45. A reasonable trustee would know that employing the same lawyers and law firms that lead to former Bishop Estate trustees being indicted may lead to the trustee's liability.

46. Bishop Estate Trustees knew or should have known of their liability for Robert Bruce Graham's acts and omissions.

47. Colleen Hirai appointed Attorney Robert Bruce Graham to serve as a "master", which is a neutral fact gatherer.

48. Graham was appointed to investigate two matters:  1) the removal of James Vrechek as trustee, and 2) determine the validity of the deathbed amendments to the Sharon Young trust.

49. Graham had a conflict of interest that prohibited him from being neutral on both of these matters.  These conflicts of interest are a felony under *18 USC § 1346 (Theft of Honest Services)* which is punishable by 20 years incarceration and $1 million fine.  Graham used the US Postal Services in his violation of *18 USC § 1346*.

50. On faith and belief, Graham also used email, fax, telephone, or the internet in performance of these duties (*wire fraud*), which is punishable by another 20 years incarceration and $1 million fine.

## TRUSTEE REMOVAL – GRAHAM'S CONFLICT OF INTEREST
## (THEFT OF HONEST SERVICES)

51. Graham had a conflict of interest because he owed a fiduciary duty to Bishop Estate Trustees to make it as difficult as possible to be removed.  Graham also owed a fiduciary duty to be 100% neutral in reviewing the facts to make a 100% neutral determination.

52. Reasons for removal of James Francis Vrechek as trustee:

    1. Moral turpitude:  a) Falsifying a CPA license, b) Fraud:  materially falsifying financial statements for about 1.5 years to conceal losses, c) kiting checks to conceal the fraud, and d) lying to auditors to conceal the fraud.

    2. Failure to follow the trust by not providing beneficiaries access to trustee records.

3. Failure to distribute trust assets:  Keith Wah Sen Young became entitled to ½ of his share of the trust assets on February 23, 2008, but Keith Young has not received his share of the trust.  This constituted **embezzlement** of Keith Young's assets by the Defendants' conspiracy.

4. For every year James Francis Vrechek operated the Sharon Young Trust, the Trust has had a financial loss.

53. Graham used his position as master to create new requirements in Hawaii law to benefit his clients, Bishop Estate Trustees.

54. Graham used his position as master to create a new ability of a trustee to decide what documents to provide beneficiaries, despite the Sharon Young Trust providing unfettered access to trust documents.  *Exhibit 2, Report of Master Concerning Mark Young's Petition To Remove Trustee.*  Many of the flaws in the report are shown in my objection to the Master's Report.  *Exhibit 3, Mark Young's Objection To Master's Report Concerning Trustee Removal.*

55. *Exhibit 3* reasonably informed the Attorneys and Hirai of the situation.  The Attorneys had a professional obligation to objected and champion justice, their failure to object constituted an acceptance of the conspiracy.

56. Graham was a prominent figure in the *Broken Trust* book and cited on pages 157, 175, 214, 240-241, 268, 270, and 274.

57. Rather than perform factual research, Graham expected the facts to find him. Graham instead focused on legal research to reach a conclusion that would benefit his clients, Bishop Estate Trustees.

58. Graham changed Hawaii's law to no longer recognize moral turpitude as a reason for trustee removal.  On faith and belief, Hawaii has become the first state to eliminate moral turpitude as a reason to remove a trustee.

59. In addition, Graham created new requirements for trustee removal.  Graham created the "Bernie Madoff" standard for trustee removal, an unsupervised trustee in Hawaii can only removed after the assets are gone.  This furthers organized crime by making it nearly impossible to remove organized crime figures from Bishop Estate, so organized crime can continue to misappropriate and embezzle assets from Bishop Estate.

### UNDUE INFLUENCE OF RELIGIOUS ADVISOR'S – GRAHAM'S CONFLICT OF INTEREST (THEFT OF HONEST SERVICES)

60. Graham was appointed to be a neutral fact gatherer on the issue of Sharon Young's testamentary capacity and undue influence, owing a 100% loyalty to be neutral

61. *HRS § 1-1* adopts the American and English common law prior to 1883 as Hawaii's primary common law.

62. American and English common law prior to 1883 presumed that gifts to religious advisors were the product of undue influence.

63. Graham is the attorney for the Roman Catholic Church, one of the largest and richest churches.  Recognizing the common law presumption would cost his client, the Roman Catholic Church, millions of dollars, so Graham used his master position to change Hawaii's law to benefit his client.

64. Graham performed substantial legal research using the internet (*wire fraud*) to reach a conclusion that favored his client.  Graham used the US Mail during the process.  Graham's action violated of *18 USC § 1346 (Theft of Honest Services)* and is punishable by 20 years incarceration and a $1 million fine.  *Exhibit 4, Report of Master Concerning the Second and Third Amendments*

65. *Exhibit 5, Mark Young's Objection to Master's Report Concerning Second and Third Amendment* informed the Attorneys of many of the flaws in Graham's report

providing a reasonable opportunity to object and champion justice.  The Attorneys had a professional obligation to object to wrongful misconduct in Graham's report. The Attorney's failure to object constituted joining of the conspiracy.

66. Judge Hirai promptly approved Graham's report because of Judge Hirai's and Graham's mutual affiliation to the organized crime that infiltrated Bishop Estate.  Hirai used the US Mail system to accomplish this task.  Judge Hirai's actions were a violation of *18 USC § 1346 (Theft of Honest Services)*.  Graham and Hirai's actions allowed them to earn income from a pattern of racketeering.

## CONSPIRACIES IN RESTRAINT OF TRADE

67. A conspiracy of this cannot be accomplished alone, so Graham engaged in price fixing with the Attorneys, so that the other co-conspirators would benefit at the expense of the Sharon Young Trust.

68. Hawaii is a small state, with generally low attorney hourly rates.  On faith and belief, the University of Hawaii turns out more law school graduates than the Hawaii's economy can absorb.

69. **Price Fixing Attorney Fees:** Attorney Graham started by creating a $1000 per hour price floor with the Attorneys, a per se violation of *15 USC § 1*. *Exhibit 1, Master's Preliminary Report, page 6*.  Any fixing of prices among competitors is a per se violation of *15 USC § 1*, punishable by 10 years incarceration and $1 million fine; $100 million fine for corporations.  *15 USC § 1* violations are also a violation of *18 USC § 1341 (mail fraud)*, which is punishable by another 20 years incarceration and $1 million fine.

70. When requested to preserve evidence, Graham willfully destroyed evidence and threatened sanctions for even being requested to preserve evidence. *Exhibit 6, Letter from Ashford & Wriston dated August 7, 2008.*

71. Graham used the US mail to send *Exhibit 1* to Kanemitsu and Sakamoto.

72. Attorneys owe a professional duty to object to involvement in price fixing, a sufficient time has elapsed the Attorney's failure to object can be deemed a joining of the conspiracy in restraint of trade.

73. **Embezzlement:** Jason Tani appeared as James Vrechek's individual attorney. Jason Tani's services did not benefit any beneficiary of the trust and were not a legitimate expense of the trust.

74. In furtherance of the price fixing, the Attorneys "covered" for Jason Tani, so that he could be paid out of the Sharon Young Trust, rather than from Vrechek's personal funds. This constituted embezzlement from the Sharon Young Trust.

75. Graham and other attorneys in the case further communicated about attorney hourly rates, additional violations of *15 USC § 1.* On or about September 2008, filed court documents represented communication with other attorneys to insure his rates were reasonable. These were further violations of *15 USC § 1.*

76. Graham is a shareholder and officer of the law firm of Ashford & Wriston and acts were within the scope of duties and intended benefit to Ashford & Wriston, as such, Ashford and Wriston is vicariously liable for Graham's acts and omissions.

77. **Price Fixing Trustee Compensation.** As agent of Bishop Estate Trustees, Graham also engaged in price fixing for trustees compensation by telling Vrechek that he could petition the Court for additional compensation above the statutory amount, a second violation of 15 USC § 1. *Exhibit 1, Master's Preliminary Report, page 14.*

78. Graham further acted in the Sharon Young Trust case to benefit engage in price fixing of trustee compensation by issuing reports in the Sharon Young Trust case favorable to Bishop Estate Trustees.

79. **Waiver of Attorney – Client Privilege and Attorney Work Product Privilege:** Attorney-client communications and attorney-work product in the furtherance of a federal felony is not privileged, as such the Attorney and Ashford & Wriston's files are not privileged.

80. **Conspiracy in Restraint of Trade – Rigging the State court system.** Defendants engaged in a conspiracy in restraint of trade to rig the state court system to reach conclusions favorable to Bishop Estate Trustees, such as creating caselaw making it very difficult to remove trustees. Graham drafted these reports within the scope of his agency of Bishop Estate Trustees.

81. Colleen K. Hirai was a prominent figure in the Broken Trust book and cited on pages 138, 178, 229-230, 231, 233, 238-240, 241-244, 247, 273 and 284.

82. Colleen K. Hirai has strong connections with Bishop Estate:

  1. When organized crime need an internal investigation to look official, they petitioned Judge Hirai to appoint Patrick Yim. According to the trustee's petition, it had to be Yim or no one, and his findings could not be made public. Judge Hirai approved the deal. *Broken Trust p. 138*

  2. Organized crime does not have to worry about performance of the trust because the one judge (Judge Hirai) regulates most if not all of the large trusts in Hawaii has strong ties to Bishop Estate.

  3. Judge Hirai's father (Seichi "Shadow" Hirai) worked for many years as a clerk to Dickie Wong, a Bishop Estate trustee. Shadow Hirai was referred to by the *Honolulu Advertiser* as "a man so politically connected that he sometimes was called 'The 26th Senator.'" *Broken Trust, page 230.*

4.  Judge Hirai sealed court records relating to Bishop Estate to further organized crime.

5.  Judge Hirai has required Mark Young appear in person in Hawaii at court hearings (traveling from the east coast of the continental United States), rather than telephonically to encourage Mark Young to accept a settlement that would favor organized crime.

6.  Judge Hirai used her position to further organized crime relating to Bishop Estate.  By producing favorable results for Bishop Estate, Hirai furthered her own career and as such derived income indirectly from a pattern of racketeering.

7.  On or about September 2008 in a video taped court hearing, Judge Hirai stated she only appointed attorneys to be masters.  This was done to further organized crime – Judge Hirai only appoints attorneys who will reach conclusions that favor Bishop Estate, so she can approve their reports, in essence, creating a court system rigged to reach a conclusion that favors Bishop Estate.

8.  Bishop Estate Trustees as part of organized crime does not need to worry about performance, on or about February 27, 2008, despite Bishop Estate's losing $1.7 Billion, Judge Hirai approved upto a 66% pay increase for Bishop Estate Trustees. *Exhibit 7, Honolulu Advertiser dated 2-28-2009*

83. There is no judicial immunity for a state court judge who commits federal felonies or civil damages stemming from those violations or for violating federal statutes.

84. Douglas Ing was a prominent figure in the Broken Trust book and cited on pages 193, 237, 250, 264, 268-271, 273, 283, 284, and 290-291.

85. On faith and belief, the State of Hawaii's judicial, law library, or law enforcement systems received at least $1 in federal funding, making the Hawaii state judicial system, governed under *18 USC § 645*.

### ON-GOING FELONIES

86. John Doe's #1 to 100 (additional may be added) are persons who aided, abetted, or encouraged the other Defendants in this case, each with joint and several liability.

87. Attorneys and expert witnesses who aid, abet, or encourage the Defendants should expect to be joined as a party.  Choose your co-conspirators wisely.

88. The attorney-client / attorney work product privileges will not apply until the felonies have ceased, so please preserve copies of all communications, including emails.

### FELONY MURDER RULE

89. Plaintiff is pursuing an organized crime entity with a history of threatening witnesses, such as how Lauren Childers received threats to the point she never testified.  There is a risk that the organized crime enterprise will carry out additional crimes against Plaintiff.

90. All Defendants will be liable jointly and severally as co-conspirators for these additional crimes.  Defendants are reasonably informed of the Felony Murder Rule, where a death occurring during the commission of a felony makes all co-Defendant's equally liable for the death as capital murder and would confer jurisdiction to Florida.

91. Plaintiff is a resident and citizen of the State of Florida.  Florida law provides for the death penalty for felony murder, which in event of Plaintiff's murder would make all of the Defendant's potentially eligible for the death penalty.  Florida provides two humane execution methods:  1)  death by electric chair and 2) death by lethal injection.

92. In the event Plaintiff dies before this case is resolved, Plaintiff gifts his interest in this case to the State of Florida.  *Exhibit 12, Codicil.*  The codicil applies whether Plaintiff

dies from homicide, auto accident, sky diving accident, or any other cause.  The original of the codicil was sent to the Attorney General's office, so if it is lost, it will be presumed still valid and in force.   The Florida Attorney General's office is a more formidable adversary than Plaintiff.  In addition, Plaintiff has a living will and will be removed from life support if in a persistent vegetative state.  *Exhibit 13, Living Will.*

93. Plaintiff suffered damages as a result of one of more of Defendants acts or omissions.

### COUNT 1:  CONSPIRACY IN RESTRAINT OF TRADE (15 USC § 15)

94. Allegations in paragraphs 1-93 are incorporated by reference and re-alleged.

95. Plaintiff provided several Defendants with a notice to preserve evidence.  Graham willfully destroyed evidence and threatened sanctions for even being requested to preserve evidence.  *Exhibit 6, Letter from Ashford & Wriston dated August 7, 2008.*

96. Defendants conspired to fix prices of trustee fees and attorney fees, in violation of federal antitrust laws and *15 USC § 1.*

97. An unbiased state court system is essential for interstate commerce, Defendants engaged in a conspiracy of restraint of trade to "rig" the state court system to create caselaw favorable to the organized crime that infiltrated Bishop Estate.

98. Federal antitrust laws entitle Plaintiff to prejudgment interest, treble damages, and attorney fees pursuant to *15 USC § 15.*

99. As a matter of public policy to encourage antitrust plaintiff lawsuits, the attorney is one way – only the Plaintiff is entitled to attorney fees.  Federal law trumps any inconsistent state law.

100.    Defendants are joint and severally liable.

101.    Penalties for antitrust violations are presumed willful and not subject to bankruptcy.

### COUNT 2:  *18 USC § 1346* THEFT OF HONEST SERVICES / MAIL FRAUD

102.   Allegations in paragraphs 1-93 are incorporated by reference and re-alleged.

103.   Graham committed theft of honest services by having conflicting loyalties.

104.   Hirai committed theft of honest services by having conflicting loyalties.

105.   Vrechek committed theft of honest services by having conflicting loyalties of his own interests versus the best interests of the Sharon Young Trust.

106.   Kanemitsu and Tani committed theft of honest services by having conflicting loyalties to the Sharon Young Trust and to Vrechek.

107.   Recognizing removal of Vrechek as a trustee for moral turpitude would make it easier to remove a Bishop Estate trustee for moral turpitude, so Graham, Hirai, Kanemitsu, Tani, and Vrechek committed theft of honest services to prevent that.

108.   Defendants conspired to have Graham, Hirai, Kanemitsu, Tani, and Vrechek commit theft of honest services using the US Mail.

### COUNT 3:  *18 USC § 1964* RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS (RICO)

109.   Allegations in paragraphs 1-93 are incorporated by reference and re-alleged.

110.   Defendants violated *18 USC § 1962*, which gives rise to civil damages under *18 USC § 1964*.

111.   Defendants conspired to commit mail fraud, theft of honest services, rig the state court system, and form a conspiracy in restraint of trade.

112.   Defendants received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal or acquired any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce

or and derive income indirectly through a pattern of racketeering or employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt or conspire to violate any provision of *18 USC 1962*.

## COUNT 4:  42 USC § 1983 CLAIM AGAINST INDIVIDUAL DEFENDANTS

113.    Allegations in paragraphs 1-93 are incorporated by reference and re-alleged.

114.    Judge Hirai acted willfully, deliberately, maliciously, or with reckless disregard for Plaintiff's clearly established constitutional rights.  Judge Hirai used her position to further organized crime and derive income indirectly through a pattern of racketeering.

115.    To the extent any of the Graham may claim governmental immunity, the Graham acted willfully, deliberately, maliciously, or with reckless disregard for Plaintiff's clearly established constitutional rights.

116.    To the extent any of the John Doe's claim governmental immunity, the John Doe's acted willfully, deliberately, maliciously, or with reckless disregard for Plaintiff's clearly established constitutional rights.

## COUNT 5:  CIVIL CONSPIRACY

117.    Allegations in paragraphs 1-116 are incorporated by reference and re-alleged.

118.    Two or more of the Defendants formed a conspiracy by a concerted action to accomplice a criminal or unlawful purpose, or to accomplish some purpose not in itself unlawful by criminal or unlawful means.

119.    Defendants' willful, intentional, or reckless acts of civil conspiracy give rise to punitive damages.

120.   **MINIMUM PUNITIVE DAMAGES** can be calculated based on prior amounts that were ineffective in stopping the prohibited activity.

121.   International accounting firm Arthur Anderson estimated the tax back charge to be at or about $1 billion due to Bishop Estate's past involvement with organized crime.

122.   The $1 Billion in 1998 failed to produce the desired result:  reform Bishop Estate. Adjusting for 5% inflation to 2009, this minimum punitive damage amount should be **$1,710,339,358** to affect the change:  reform of Bishop Estate.

123.   Bishop Estate will continue to be a corrupting influence on Hawaii's judiciary until one or more of the following occur:  1) all parties involved receive lengthy prison sentences, 2) Bishop Estate administration is removed from Hawaii to a large state where Bishop Estate cannot buy as much influence, or 3) until Bishop Estate is rendered financially impotent.

| | Year | 1998 | 2009 |
|---|---|---|---|
| Value of Estimated IRS Tax Backcharge | | $1,000,000,000 | **$1,710,339,358** |

124.   Bishop Estate may seek contribution from the other Defendants for contribution to pay for the punitive damages.

### I. ATTORNEY FEES & COSTS

Plaintiff is entitled to an award of attorney fees and costs under *15 USC § 15, 18 USCS § 1964,* and other laws.  As a matter of public policy, the attorney fee provisions are mandatory plaintiff only attorney fees.  Federal preemption trumps any inconsistent state laws.

### J. PRAYER

For these reasons, Plaintiff prays that this Honorable Court grant the following:
1.   Hold Defendants jointly and severally liable;

2. Actual damages;

3. Punitive damages;

4. Costs of suit;

5. Attorney fees (mandatory award to Plaintiff pursuant to *15 USC §15, 18 USC § 1964, 48 USC 1988(b).);*

6. Treble damages (mandatory pursuant to *15 USC §15, 18 USC § 1964*);

7. Prejudgment and postjudgment interest pursuant to 15 USC §15;

8. Exemplary damages;

9. Determination that Defendants' conduct was willful and malicious, so that the judgment cannot be discharged in a bankruptcy;

10. Relocation of the administration of Bishop Estate to the State of Florida; and

11. All other relief the court deems appropriate.


Respectfully submitted,


**Mark WS Young**
*FL Bar No. 48822*
4870 127th Trail N
West Palm Beach, FL 33411
Tel 561-719-1250
**PLAINTIFF PRO SE**