ROBERT BRUCE GRAHAM, JR. 1305-0
Alii Place, Suite 1400
1099 Alakea Street
Honolulu, Hawai'i 96813
Telephone No. 539-0400

Master

2005 AUG 26 PM 4: 05

F. PAGAY
CLERK

## IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

## STATE OF HAWAII

| | |
|---|---|
| IN THE MATTER OF THE<br><br>SHARON M. Y. YOUNG<br>REVOCABLE LIVING TRUST<br>AGREEMENT dated April 28, 1995 | T. No. 05-1-0001<br>(Trust Proceeding)<br><br>PRELIMINARY REPORT OF THE MASTER, EXHIBITS 1 THROUGH 6; CERTIFICATE OF SERVICE<br><br>Hearing Date: September 2, 2005<br>Time: 10:00 a.m.<br>Judge: Hon. Colleen K. Hirai |

### PRELIMINARY REPORT OF THE MASTER

**I.   INTRODUCTION**

This is a preliminary report of Robert Bruce Graham, Jr., appointed Master with respect to the Trustee's Petition For Instructions filed on May 27, 2005 (the "May 27 Petition"). For reasons explained more fully below, this is merely a preliminary report. It is based entirely upon a review of the pleadings discussed hereinbelow and brief conversations with Petitioner's counsel and Respondent Mark W. S. Young ("Mark Young"). No other investigation or research has been conducted by this Master.

This Master urges a chambers conference to better focus the dispute and, ideally, to facilitate resolution of it.

RBG/#361883                                1

Plaintiff's Exhibit **1**

One of the beneficiaries under the second and third amendments, Ruey Jane Ryburn, has stated in a letter to Mark Young that she renounces any interest in the Trust. This Master is not aware of any pleading or formal disclaimer to that effect, however.

### III. MASTER'S SUGGESTION

This Master is informed that Mark Young will be in Honolulu for a few days in late August and early September, coinciding with the scheduled hearing of the May 27 Petition on September 2, 2005.

This Master suggests that a chambers conference would be desirable in order that the Court and the parties may discuss the future handling of this matter.

As it stands, the Trustee has asked six questions (the first being a two-part question) and has drawn significant fire on two of them (trustee compensation and the validity of the second and third amendments). A third question (sale of the Queen Emma Gardens property) is mentioned in passing (and opposed) by Mark Young. No one has taken any position in these proceedings concerning the questions involving Keith Young.

It is plain that Mark Young is intensely dissatisfied with the Trustee. He has developed and submitted background information to impugn the Trustee's integrity but has not sought to remove him. This Master has spoken briefly with Mark Young and has arranged to meet with him when he is in Honolulu. During the conversation, Mark Young expressed great concern about Trust expenses.

The simple fact is that litigation is likely to be at his expense and that of his brother Keith Young. Assuming that attorneys' fees and master's fees ultimately are allowed out of the Trust estate (and recognizing that such allowance is not automatic), it

is the residuary beneficiaries, Mark Young and Keith Young, who will bear the brunt of litigation expenses. Given the hourly rates of the lawyers already involved and the potential for more, litigation could cost the Trust upwards of $1,000 an hour.

In order to render a detailed report on the largely factual issues in controversy, this Master will need to make an investigation and perhaps retain experts to advise him concerning the likely competency Sharon Young and that of terminally ill patients generally. Before commissioning himself as such an investigator, this Master submits that the parties and the Court may wish to consider (a) prompt settlement, possibly with the assistance of this Master or a mediator; (b) transfer of the matter to the civil division where an all-out war can be waged after full discovery; (c) negotiated statements of facts upon which this Master might render a report to this Court; (d) acceptance of this preliminary report as being final as to certain issues, or (e) some combination or development of some or all of the above.

## IV. MASTER'S PRELIMINARY COMMENTS

This Master's initial thoughts and preliminary comments concerning the questions presented by the Trustee in the May 27 Petition follow. They are provided now for the information of the parties and this Court and are subject to revision with further information and research.

### 1. Keith Young's Claim Of A 1/5 Interest In Certain Real Estate

The Memorandum of Agreement dated May 2, 2001, between Sharon M. Y. Young, Trustee, and Keith Young (Exhibit B to the May 27 Petition) is a very poorly drafted and inconsistent document. The Memorandum, however, states clearly in the first numbered paragraph that *"Seller [Sharon M. Y. Young, Trustee] has previously sold*

RBG/#361883                                5

5.  **Sale Of Real Estate (Queen Emma Gardens)**

The Trustee is empowered to sell trust real estate. Article XII of the Trust provides that in addition to *"those powers now or subsequently conferred by law"* the Trustee has the powers enumerated in Section 12.06 of the Trust, which include the express power *"with respect to real and personal property or any interest in real or personal property owned by the Trust: [1] To ... sell the same at public or private sale, for cash or on credit, upon such terms as the Trustee deems advisable."*

No authority or instructions of this Court are necessary. If the Trustee, in the prudent exercise of his discretion, thinks sale of the Queen Emma Gardens apartment is advisable, he is authorized to sell it.

This conclusion is not changed by any of the amendments to the Trust. The first amendment, dated March 9, 2002 (superseded by the second and third amendments if they are valid), provides that the Trustee is not authorized to sell assets *"for the sole purpose of providing the Trust Estate with sufficient cash to justify the distributions"* to the Yusts, except in connection with final distribution. The Petition states that sale is *"necessary to meet the regular expenses of administration, such as debt service, taxes (Federal and State), trustee's fees, and professional fees,"* and to pay Keith Young his share of rental income. No mention is made of using the proceeds of sale to pay the Yusts. Thus, whether or not the second and third amendments are effective, the Trustee is free to sell property for the purposes stated, if he deems it advisable to do so.

6.  **Trustee Compensation**

The formula for trustee compensation is set forth in the Trust. In the case of an individual Trustee, it is to be *"commensurate with the services actually performed."*

Failing anything more, this Master would be inclined to turn to the statutory framework for definition of the value of trustee's services. H.R.S. § 607-18 provides:

> **§607-18 Fees and expenses of trustees.** (a) Upon all moneys and other property received in the nature of revenue or income of the estate, such as rents, interest, dividends, and general profits, trustees, except trustees of a charitable trust, shall be allowed as commissions payable out of the income received during each year, seven per cent for the first $5,000 and five per cent for all over $5,000 the commissions to be payable as and when the income is received, but not more often than once a year.
>
> (b) Upon the principal of the estate, trustees shall be allowed as commissions one per cent on the value at the inception of the trust payable at the inception out of the principal, one per cent on the value of all or any part of the estate upon final distribution payable at the termination out of the principal, and two and one-half per cent upon all cash principal received after the inception of the trust and neither being nor representing principal upon which the two and one-half per cent has previously at any time been charged, payable at the receipt out of the principal, and two and one-half per cent upon the final payment of any cash principal prior to the termination of the trust, payable at the final payment out of the principal, and in addition thereto five-tenths of one per cent on the value at the expiration of each year during the continuance of the trust payable annually out of the principal; provided that such five-tenths of one per cent on the principal shall not apply to charitable trusts, nor to the extent the trustee has employed others to perform bookkeeping and clerical services at the expense of the estate as permitted by the trust document or as provided in section 554A-3.
>
> (c) Such further allowances may be made as the court deems just and reasonable for services performed in connection with sales or leases of real estate, contested or litigated claims against the estate, the adjustment and payment of extensive or complicated estate or inheritance taxes, the preparation of estate and income tax returns, the carrying on of the decedent's business pursuant to an order of court or under the provisions of any will, litigation in regard to the property of the estate, and such other special services as may be necessary for the trustee to perform, prosecute, or defend. All contracts between a trustee and a beneficiary other than the creator of the trust, for higher compensation than is allowed in this section shall be void.
>
> (d) This section shall apply as well to future accounting in existing estates as to new estates. [RL 1935, pt of §3793; am L 1935, c 124, §1; am L 1943, c 88, §1 and c 149, §1; RL 1945, §9757; am L 1947, c 100, §1; am L 1951, c 170, §1; RL 1955, §219-17; am L 1959, c 169, §1; HRS §607-18; am L 1976, c 200, pt of §1; am L 1988, c 362, §1; am L 1992, c 85, §1; am L 1993, c 34, §2]

The statutory schedule is the Legislature's statement of what a trustee should be paid for standard services and leaves room to a trustee rendering extraordinary services to approach the court for further allowances. In the absence of a pre-agreed schedule established by the settlor, the statutory schedule fixes the compensation to be paid. The Trustee has not sought extraordinary compensation. If he thinks any is due him, he should petition the Court with a specific request.

This Master is not aware of any basis in Hawaii law for an hourly rate unless the settlor and the trustee agreed on it. §607-18(c) says simply: *"All contracts between a trustee and a beneficiary other than the creator of the trust, for higher compensation than is allowed in this section shall be void."*

Mark Young, Paul Yust and Maria Yust argue that the Trustee previously agreed to work for $75 per hour. But the fact that the Trustee previously agreed to handle a different family trust (the Ralph Young Trust) at the rate of $75 per hour is not dispositive. The services contemplated in that matter were discreet and simple (approach First Hawaiian Bank, prepare a petition to appoint a successor, incorporate an entity) and the time limited to 50 hours. (See Exhibit 1 to Mark Young's June 20, 2005 Response To Trustee's Petition For Instructions.)

In the absence of an agreement with the settlor, the Trustee is entitled to the statutory schedule of fees and to special fees upon application to and order of the Court.

### 7.   Validity Of The Second And Third Amendments

The explosive issue of the validity of the second and third amendments remains. There seems to be no doubt that Sharon Young did sign them, so the issue is capacity and alleged undue influence. The amount at stake is $425,000 payable to the Hawaii

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

| | | |
|---|---|---|
| IN THE MATTER OF THE | ) | T. No. 05-1-0001 |
| | ) | (Trust Proceeding) |
| SHARON M. Y. YOUNG | ) | |
| REVOCABLE LIVING TRUST | ) | **CERTIFICATE OF SERVICE** |
| AGREEMENT dated April 28, 1995 | ) | |
| | ) | |
| | ) | Hearing Date: September 2, 2005 |
| | ) | Time: 10:00 a.m. |
| | ) | Judge: Hon. Colleen K. Hirai |
| | ) | |
| | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was duly served by hand delivery or by mail by depositing same in the United States mail, postage prepaid, by regular mail, on August 26, 2005, addressed as shown below:

FRANK T. KANEMITSU, ESQ.
STEVEN L. RINESMITH, ESQ.
CATHY L. SEKIGUCHI, ESQ.
Rinesmith & Sekiguchi LLLC
Suite 2775, Mauka Tower
Pacific Guardian Center
737 Bishop Street
Honolulu, HI 96813
Attorney for Trustee James F. Vrechek

RONALD R. SAKAMOTO, ESQ.
DAVID M. K. LUM, ESQ.
Char Sakamoto Ishii Lum & Ching
Davies Pacific Center
841 Bishop Street, Suite 850
Honolulu, Hawaii 96813
Attorney for Respondent
  Hawaii Satsang Society, Inc.

RBG/#361883                                           1

Mark W. S. Young
4 Unity Terrace
Rutledge, PA 19070
Beneficiary Pro Se

Keith W. S. Young
3017 Kaunaoa Street
Honolulu, HI 96815
Beneficiary Pro Se

Paul Henry Yust
5333 E. Rosewood Street
Tuscon, AZ 85711
Beneficiary Pro Se

Maria Elizabeth Yust
6149 E Hawthorne Street
Tuscon, AZ 85711
Beneficiary Pro Se

Don H. Bennett, Esq.
Pioneer Plaza
900 Fort Street Mall #910
Honolulu, HI 96813
Attorney for Mark W. S. Young,
  Special Appearance

Ms. Ruey Jane Ryburn
3649 Nihipali Place
Honolulu, HI 96816

Mr. John Chamberlain
P. O. Box 995
Southport BC Queensland
Australia 4215

Ms. Ansara (Elsie) Sayer
P. O. Box 1286
Clatskanie, Oregon 97016-1286

RBG/#361883                                      2

Derek Tomita, Esq.
Hirai Lum Tomita & Higa
220 South King Street, #950
Honolulu, HI 96813

DATED: Honolulu, Hawaii, August 26, 2005.

_____
ROBERT BRUCE GRAHAM, JR.
Master

RBG/#361883

3