3/8/08

FIRST CIRCUIT COURT
STATE OF HAWAII
FILED

2008 FEB 29 PM 2:00

F. PAGAY
CLERK

ROBERT BRUCE GRAHAM, JR. 1305-0
Alii Place, Suite 1400
1099 Alakea Street
Honolulu, Hawai'i 96813
Telephone No. 539-0400

Master

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

| | |
|---|---|
| IN THE MATTER OF THE<br><br>SHARON M. Y. YOUNG<br>REVOCABLE LIVING TRUST<br>AGREEMENT dated April 28, 1995 | T. No. 05-1-0001<br>(Trust Proceeding)<br><br>**REPORT OF THE MASTER CONCERNING BENEFICIARY MARK WS YOUNG'S PETITION TO REMOVE TRUSTEE [Filed April 9, 2007]; CERTIFICATE OF SERVICE**<br><br>Hearing Date: None Scheduled<br>Time: None Scheduled<br>Judge: Hon. Colleen K. Hirai |

**REPORT OF THE MASTER CONCERNING BENEFICIARY MARK WS YOUNG'S PETITION TO REMOVE TRUSTEE [Filed April 9, 2007]**

**I.   BACKGROUND**

Beneficiary Mark WS Young's Petition To Remove Trustee (the "Removal Petition") was filed herein on April 9, 2007. Petitioner Mark W. S. Young ("Mark Young") seeks to have James F. Vrechek ("James Vrechek") removed as trustee of the Sharon M. Y. Young Revocable Living Trust dated April 28, 1995 (the "Trust"), and himself and his brother, Keith W. S. Young ("Keith Young") appointed as co-trustees. Mark Young and Keith Young are the residuary beneficiaries of the Trust. Depending upon this Court's determination as to the validity of the Second and Third Amendments

RBG/438883

Plaintiff's
Exhibit 2

executed by the settlor, Sharon Young, in the week before her death (the subject of another petition now pending in this matter), other beneficiaries of the Trust may be Paul Henry Yust, Maria Elizabeth Yust, Ruey Jane Ryburn, Ansara (Elsie) Sayer, John Chamberlin, and the Hawaii Satsang Society, Inc. (the "Society").

## II. PROCEDURAL HISTORY

Mark Young filed a First Supplemental Declaration of Counsel in support of the Removal Petition (April 9, 2007), a response to the Trustee's Objection to the Removal Petition (May 24, 2007), and a First Supplement (June 29, 2007).

Keith Young, although nominated by Mark Young to serve as a co-trustee, filed a Statement of No Position on May 15, 2007, in which he says he will not even appear at hearing.

The Society filed a similar notice on May 14, 2007 and later, on July 6, 2007, filed a more detailed notice that it takes no position as to aspects of the Removal Petition and objects to other aspects of it. These are discussed below.

The Trustee, James Vrechek, opposes the Removal Petition and has filed an Objection (May 14, 2007), an Affidavit (May 22, 2007), and a further Response (July 17, 2007).

Nothing has been filed with respect to the Removal Petition by any of Paul Henry Yust, Maria Elizabeth Yust, Ruey Jane Ryburn, Ansara (Elsie) Sayers and John Chamberlin.

This Master was appointed by Order Of Appointment entered on June 15, 2007.

## III. DISCUSSION

### 1. Introduction

This Master submits that the Removal Petition should be denied.

The Removal Petition is incident to a flurry of actions concerning the Trust and the circumstances of the Second and Third Amendments. Mark Young is dissatisfied with the situation of his mother's estate and has made a series of efforts to rearrange matters. His effort to remove the Trustee follows an unsuccessful effort to compel the Trustee to post a bond and is premised at least in part upon his belief that the Trustee somehow engineered the Second and Third Amendments, which reduce the sons' residuary estate in favor of the Society. But there is no evidence of any such involvement on the part of the Trustee. Indeed, the bulk of the Removal Petition is a mixture of innuendo and suspicion.

### 2. The Sons are Not Appropriate Trustees

The Trust provides that the sons' respective shares are to be held in trust until they are 45 years of age, with a partial distribution to each when he attains the age of 40. Keith Young is 40 years of age. Mark Young is 36. See, Trust, § 1.03.

Plainly, if Sharon Young had wanted her sons to manage her estate, she could have left it to them outright. If she had wanted them to be her successor trustees, she could have named them as such. She created a trust, delayed distribution and chose James Vrechek as her trustee.

Keith Young, who apparently has no interest in whether he is or is not appointed a successor trustee, has filed a Statement of Claim against the Trust, claiming an undivided interest in certain Trust properties, and has filed suit against the Trustee (Civil No. 05-1-01249, First Circuit). There also is pending a petition for instructions filed by the Trustee on May 27, 2005 concerning, *inter alia*, a promissory note from Keith Young, compensation possibly due Keith Young under a real estate property management services agreement, and Keith Young's claim of undivided interests in

certain Trust properties. In short, Keith Young has asserted claims which are adverse to the interests of the Trust. As such, he is not an appropriate nominee.

Mark Young has mounted a considerable effort to invalidate the Second and Third Amendments to the Trust, which puts him in immediate opposition to the interests of four possible beneficiaries, including the Society, and in conflict with the neutrality generally expected of a trustee in proceedings to determine whether an amendment is effective. For these reasons alone, and without any consideration of the history of these proceedings, Mark Young is not an appropriate nominee, either.

That leaves the question of whether the incumbent Trustee, James Vrechek, should be replaced at the behest of Mark Young with some third party.

### 3.    Applicable Legal Standards

The removal of trustees of any trust is not done lightly or upon the strength of conclusory allegations and shrill denunciations. The power to remove a trustee *"is a power that the court should not lightly exercise."* In re Bixby's Estate, 362 P.2d 43, 47 (Cal. 1961). *"[R]emoval of a trustee is a drastic remedy which should be employed only when clearly necessary."* In re Frances Edward McGillick Foundation, 594 A.2d 322, 332 (Pa. Super. 1991), rev'd in part on other grounds, 594 A.2d 322 (Pa. 1994). *"[C]charges of fraud, breach of trust, and gross neglect ... must be proven by clear, strong, and cogent evidence."* Willson v. Kable, 15 S.E.2d 56, 60 (Va. 1941).

Mere allegations are not sufficient and the proponent bears the burden of proof:

> [C]ertainly the degree of proof should be more than a preponderance of the evidence ... before a trustee can be charged with disloyalty, with a breach of trust, or with engaging in conflicting interests ... those claiming such forms of misconduct are required to establish their case by clear and convincing evidence.

Manchester v. Cleveland Tr. Co., 168 N.E.2d 745, 751 (Ohio App. 1960).

The form or adequacy of a trustee's accounts are among the weakest grounds to support removal of a trustee. "[T]he failure to render such an account constitutes a mere technical breach and does not warrant removal of the trustee unless he refuses or is unable to render an account when requested to do so by a proper party." Attorney General v. Olson, 191 N.E.2d 132, 135 (Mass. 1963). See also, Mississippi Valley Tr. Co. v. Buder, 47 F.2d 507 (8th Cir. 1931) cert. denied, 283 U.S. 854. Even where reports were not made promptly and were not in "such shape as they should have been", there were not adequate grounds to remove the trustee. Wylie v. Bushnell, 115 N.E. 618, 624 (Ill. 1917).

It is settled law that removal should be granted only sparingly and only when clearly necessary to protect the trust estate. See, e.g., In re Duke, 702 A.2d 1008, 1023 (N.J. Super. 1995) aff'd, 702 A.2d 1007 (N.J. App. Div. 1997): *"Removal of a trustee ... should be granted only sparingly."* See also, Sternberg v. St. Louis Union Tr. Co., 66 F. Supp 23, 25 (E.D. Mo. 1946); and Waller v. Hosford, 130 N.W. 1093, 1094 (1911). *"Removal of a trustee is ... a drastic action, and proof of the need for this remedy must be clear."* In re Estate of Croessant, 393 A.2d 442, 446 (Pa. 1978). The court's power to remove a trustee *"'should be exercised sparingly and (only) upon a showing of clear necessity.'"* Brown v. Brown, 379 N.E.2d 634, 640 (Ill. App. 1978) (quoting Chicago Title & Tr. Co. v. Rogers Park Apt. Bldg. Corp., 32 N.E.2d 137, 141-42 (Ill. 1941)).

Removal is not intended to be used as a punitive device to penalize trustees:

> The court of probate in such a case is called upon to exercise a wise discretion for the protection of the estate and those interested in it. Its power of removal is to be used to that end rather than for the punishment of a fiduciary who has failed in the performance of his duties.

Carroll v. Arnold, 141 A. 657, 659-60 (Conn. 1928). *"Some beneficial end must be achieved by the removal or it will not be justified."* Willson v. Kable, 15 S.E.2d at 59.

Mark Young's dissatisfaction with the Trustee is not a reason to remove the Trustee. *"It is clear from all of [the] authorities that a trustee does not merely serve at the pleasure of the trust beneficiaries. The key to removal is still the best interests of the operation of the trust."* Schildberg v. Schildberg, 461 N.W.2d 186, 191 (Iowa 1990). *"'Without a demonstration that the trust corpus is in danger of dissipation, mere displeasure of a beneficiary is an insufficient reason for removing a testamentary trustee.'"* In re Luhrs Trust, 443 N.W.2d 646, 651 (S.D. 1989) (quoting In re White, 484 A.2d 763 (Pa. 1984)).

Nothing in the record before the Court suggests that removal is necessary to safeguard Trust property or to prevent harm to the Trust estate.

Even where there are breaches of trust, courts are wary of removal as the remedy. In Schildberg v. Schildberg, 461 N.W.2d 186, 191 (Iowa 1990), the Court said: *"Judicial removal of a trustee will not be grounded on a mere error of judgment or conduct even though there is a technical breach of the trust, if the trust estate does not suffer."* Continuing the court said:

> [C]ourts have the authority to remove and replace trustees when there is sufficient reason to do so to protect the best interests of the trust and its beneficiaries. ... While courts have wide latitude of discretion in such matters, they consistently decline to order removal of a trustee unless such action is clearly in the best interests of the trust and its beneficiaries. ... The power to remove a trustee should be used only when the objects of the trust are endangered.

Id.

Similarly, see Birmingham Tr. Nat'l Bank v. Henley, 371 So. 2d 883, 897 (Ala. 1979) (*"'The removal of a trustee is a drastic action which should only be taken when

*the estate is actually endangered and intervention is necessary to save trust property"*) (quoting Ingalls v. Ingalls, 59 So.2d 898, 903 (Ala. 1979)) cert. denied, 445 U.S. 915 (1980); In re Estate Bost, 460 N.E.2d 1156 (Ohio App. 1983); Manchester v. Cleveland Tr. Co., 168 N.E.2d at 752; and In Re Corr's Estate, 58 A.2d 347 (Pa. 1948).

> In Sternberg v. St. Louis Union Tr. Co., 66 F. Supp at 25, the Court said:
>
> While misconduct of the trustee or mismanagement of the trust estate is ground for removal of the trustee, to warrant such removal there must be such misconduct as to evidence the want of capacity or fidelity putting the trust property in jeopardy. ... There must be a clear necessity for interference to save the trust property. A trustee will not be removed for every violation of duty or even breach of trust if the fund is in no danger of being lost.

Similarly, *"it is not every violation of duty, or mismanagement of the part of the trustee, that will necessitate his removal, especially where the trust fund is in no danger of being lost on account of such breach of duty."* Wheatcraft v. Wheatcraft, 102 N.E. 42, 44 (Ind. App. 1913).

The Hawaii Supreme Court has expressed the same view in the related matter of guardians. When a daughter sought to remove the guardian of the property of her mother, the circuit judge denied the petition and the Supreme Court affirmed, saying:

> Appellant's [daughter's] allegations as to the appellee's [guardian's] indictment for manslaughter, removal as a trustee in a bankruptcy matter and hostility toward the appellant certainly do not, either individually or collectively, add up to grounds for removal as a matter of law. The allegations with respect to commissions and expenses are more serious, but obviously not every breach of trust by a guardian, per se, requires removal as a matter of law.

Matter of the Property of Jaffarian, 72 Haw. 154, 155, 808 P.2d 1277, 1279 (1991).

Mark Young has offered no evidence that the Trust is in danger of being lost, that removal of the Trustee is necessary to save the Trust property, or that removal of the Trustee is necessary to prevent harm to the Trust.

In this case, the Trustee has submitted his accounts and will be held to account. If there has been mismanagement, this Court has the power to surcharge the Trustee. Changing the trustee will not correct anything that has happened, if anything. In fact, a change will only further complicate the proceedings now pending.

### 4. Various Assertions Do Not Justify Removal

The assertions made by Mark Young as grounds for removal of James Vrechek are noted and briefly discussed here for the sake of completeness. In this Master's estimation, none rises to the level of a basis for removal. To the extent that any claim may be omitted in this discussion, it too is insufficient basis to support a removal of a trustee selected by the settlor of the Trust.

 a. <u>Availability of Records</u>. Mark Young asserts that he has been unable to obtain an inspection of Trust records. Attorney Frank Kanemitsu, acting for James Vrechek, characterized as unreasonable Mark Young's request for all trust records. Mr. Kanemitsu stated, however, that James Vrechek would file an accounting with the Court. <u>See</u>, Letter to Lila Kanae, Esq., dated March 27, 2007, Ex. 10 to First Supplemental Declaration filed April 9, 2007. He has done so. <u>See</u>, Supplement To The Trustee's Petition ... Third Account Of the Trustee, filed June 15, 2007. If Mark Young has need of specific records to respond to the accounting, he should request them. This Court has power to order their production. It is not necessary to remove the Trustee to effect production and could be counterproductive to do so.

b. <u>Valuation of Assets</u>.  Mark Young disputes the Trustee's valuation of certain assets.  Specifically, Mark Young contends that the inventory from his mother's jewelry business is grossly undervalued at about $32,000 when his mother paid about $224,000 for it and ascribed a retail value to it of almost $504,000.  The market value of trust assets is important if they are being sold or distributed on a disproportional basis.  Otherwise, valuations are largely internal affairs.  The tax authorities may object to an unreasonably low valuation; trustees (whose commissions are based in part upon the value of assets) often seek high valuations.  This Master does not see how the value ascribed to the jewelry harms anyone at this time.  And, it may be that Sharon Young disposed of some of her inventory before her death.  The Trustee can be expected to account only for what he received in trust.  Valuation disputes can be resolved without removing the Trustee.

c. <u>$49,000 Might Be Missing</u>.  This claim and any other monetary disputes will be resolved by the accounting.  If the accounting reveals defalcation by the Trustee, removal may then be appropriate.  For now, the claim is speculative at best.  Even Mark Young qualifies his statement, saying "As best I could determine back then" over $49,000 "appeared" to be missing.  <u>See</u>, Declaration of Mark WS Young attached to the Removal Petition herein; paragraph 9.e.at p. 4, filed April 9, 2007.

d. <u>Hostility</u>.  Mark Young argues that Keith Young's lawsuit against James Vrechek creates hostility between Mr. Vrechek and the sons.  This is a bootstrapping argument and it belongs primarily to Keith Young, if to anyone.  Keith Young has taken no position with respect to the Removal Petition.

 e. <u>Trustee's Background</u>. Mark Young asserts that he has discovered facts about the Trustee's personal history which make James Vrechek unsuitable. These allegations include the following:

 (1) <u>James Vrechek improperly identified himself as a licensed CPA</u>.

 This allegation does not appear to be addressed in any response and there is no evidence provided as to exactly how the alleged mis-identification arose. Many people use the term "CPA" improperly. Without intending to minimize the importance of the term or the fact that it reflects a professional licensure, this Master submits that it tends sometimes to be used as a synonym for an accountant. Not all accountants are CPAs, just as not all real estate salespersons are Realtors or Brokers. But people speak of "my CPA", "my Realtor", "my Broker" without always making the distinctions.

 It is not necessary that a trustee be a CPA and there is no evidence that Sharon Young required that her trustee be a CPA. The misrepresentation, if it occurred, was harmless in the context of the Trust. Perhaps it was a misunderstanding on Sharon Young's part that James Vrechek did not feel compelled to correct. Needless to say, professionals should not misrepresent their credentials and nothing in these comments should be construed as condoning any misrepresentation. But here, the harm, if any, is de minimis.

 (2) <u>James Vrechek falsified financial reports to Ford Motor Company and previously suffered a judgment against him for over $51,000</u>.

 These events are discussed in the Trustee's responses. They relate to matters occurring thirty-five years ago. The judgment, which arose from

imputed joint and several statutory liability for a previous employer's failure to pay withholding taxes, has been settled. They are not current events and having nothing to do with the Trust.

In Jaffarian, supra, the Hawaii Court concluded that a guardian's indictment for manslaughter and removal as a trustee in a bankruptcy matter "certainly do not, either individually or collectively, add up to grounds for removal as a matter of law." Id., at 72 Haw. 155, 808 P.2d 1279. The same is true of the elderly skeletons in Mr. Vrechek's closet.

(3) James Vrechek introduced Sharon Young to Peter Virdone, whom she named as an alternate trustee.

Whether or not this allegation is true, it is irrelevant. Mr. Virdone is not serving as a trustee and, should the issue ever arise, his qualifications can be debated then.

(4) James Vrechek referred Sharon Young to George Van Buren.

Mr. Van Buren flatly denies that he knew, met or had heard of James Vrechek at any time prior to his (Van Buren's) speaking with Sharon Young. See, Affidavit of George W. Van Buren, ¶ 8, attached to the Society's Supplemental Response, filed July 31, 2007. And, even if James Vrechek did refer Sharon Young to Mr. Van Buren, there is no misconduct inherent in recommending lawyers. There is no showing that James Vrechek was present when the Second and Third Amendments were executed or had anything to do with their formulation.

(5) <u>James Vrechek avoided service of a subpoena</u>.

This allegation rests on the assertion of Mark Young's previous counsel based upon what a court reporting firm told her had been reported to them by a process server. The subpoena was issued on October 3, 2006 in connection with Mark Young's civil lawsuit against George Van Buren and others. A dispute ensued as to whether Mark Young could obtain discovery in the civil litigation that was not contemplated by an October 25, 2005 stipulation and order of this Court in the Trust proceedings. The matter was resolved for Trust purposes by an Order entered herein on February 26, 2007 which confirmed that the stipulation and order did not limit discovery in subsequently filed civil proceedings and specifically leaving it to the trial judge in the civil proceedings to resolve discovery disputes therein. The subpoena, therefore, was outside these proceedings and the dispute was incident to a wider question since resolved.

f. <u>Prudent Investor</u>. Mark Young's First Supplement adds the further argument that James Vrechek failed to invest as a reasonable, prudent investor. Again, even if true, this is a matter to be determined in accounting and is not grounds for removal.

5. **Summary**

While Mark Young's dislike of James Vrechek is manifest, this Master perceives no sufficient basis for removal of the Trustee selected by Sharon Young. In fact, taken as a whole, Mark Young's legal campaign suggests that he is simply dissatisfied with his mother's disposition of her estate and that James Vrechek is among many things standing in Mark Young's way as he seeks to reform it. James Vrechek is probably serving exactly the role that Sharon Young intended.

## IV. RECOMMENDATIONS

Upon the foregoing, this Master recommends that this Court:

a.  approve and adopt this Master's Report;

b.  deny Beneficiary Mark WS Young's Petition To Remove Trustee; and

c.  authorize payment to this Master of reasonable fees in amounts to be shown by separate declaration to be filed herein.

DATED: Honolulu, Hawaii, this 29th day of February, 2008.

_____
ROBERT BRUCE GRAHAM, JR.
Master

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

| | |
|---|---|
| IN THE MATTER OF THE ) <br> ) <br> SHARON M. Y. YOUNG ) <br> REVOCABLE LIVING TRUST ) <br> AGREEMENT dated April 28, 1995 ) <br> ) <br> ) <br> ) <br> ) <br>_____ ) | T. No. 05-1-0001 <br> (Trust Proceeding) <br><br> **CERTIFICATE OF SERVICE** <br><br> Hearing Date: None Scheduled <br> Time: None Scheduled <br> Judge: Hon. Colleen K. Hirai |

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was duly served by hand delivery or by mail by depositing same in the United States mail, postage prepaid, by regular mail, on February 29, 2008, addressed as shown below:

FRANK T. KANEMITSU, ESQ.
STEVEN L. RINESMITH, ESQ.
CATHY L. SEKIGUCHI, ESQ.
Rinesmith & Sekiguchi LLLC
Suite 2775, Mauka Tower
Pacific Guardian Center
737 Bishop Street
Honolulu, HI 96813
Attorney for Trustee James F. Vrechek
    And
JASON M. TANI, ESQ.
RUSH MOORE LLP
Pacific Guardian Center, Mauka Tower
737 Bishop Street, Suite 2400
Honolulu, HI 96813
Co-Counsel for Trustee James F. Vrecheck,
  In his individual capacity

RONALD R. SAKAMOTO, ESQ.
DAVID M. K. LUM, ESQ.
Char Sakamoto Ishii Lum & Ching
Davies Pacific Center
841 Bishop Street, Suite 850
Honolulu, Hawaii 96813
Attorney for Respondent
   Hawaii Satsang Society, Inc.

RBG/441394

Mark W. S. Young
1000 Crestwood Court South, #1011
Royal Palm Beach, Florida 33411

  And

Arthur E. Ross, Esq.
841 Bishop Street, Suite 2115
Honolulu, Hawaii 96813

DEXTER HIGA, ESQ.
Hirai Lum Tomita & Higa
220 South King Street, #950
Honolulu, Hawaii 96813
Attorney for Keith W. S. Young

Paul Henry Yust
5333 E. Rosewood Street
Tuscon, AZ 85711

Maria Elizabeth Yust
6149 E Hawthorne Street
Tuscon, AZ 85711

Ms. Ruey Jane Ryburn
3649 Nihipali Place
Honolulu, HI 96816

Mr. John Chamberlain
Heritage View
Blk 10 #06/05, Dover Rise
Singapore 138680

Ms. Ansara (Elsie) Sayer
P. O. Box 1267
Clotsbain, Oregon 97016

  DATED: Honolulu, Hawaii, February 29, 2008.

          _____
          ROBERT BRUCE GRAHAM, JR.
          Master