Mark Young
Fla. Bar 48822
4870 127th Trail N
West Palm Beach, FL 33411
lawace@gmail.com
561-719-1250
PLAINTIFF PRO SE

IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF HAWAII

| | |
|---|---|
| Mark W.S. Young<br><br>Plaintiff<br><br>VS.<br><br>Bishop Estate / Kamehameha Schools, Robert Bruce Graham, Ashford & Wriston, LLP, James Francis Vrechek, Corbett A.K. Kalama, Diane J. Plotts, J. Douglas Keauhou Ing, Nainoa Thompson, Robert K. U. Kihune, Jason Tani, Frank Kanemitsu, Ronald R. Sakamoto, Colleen K. Hirai, And John Does #1 To 100<br><br>Defendants. | CIVIL NO. 09-00403 SOM-BMK<br><br>PLAINTIFF'S MOTION TO STAY PROCEEDINGS; EXHIBITS A, B, C, and D;<br><br>PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION;<br><br>CERTIFICATE OF SERVICE |

PLAINTIFF'S MOTION TO STAY PROCEEDINGS

Plaintiff motions the Court to stay the proceedings pursuant to *Federal Rule of Civil Procedure 7.* pending investigations by the US Department of Justice and the Internal Revenue Service.

A.  Introduction

1.   Plaintiff, Mark Young ("**Plaintiff**"), sued various defendants (the "**Defendants**") for violation of federal laws.

2.   On August 26, 2009, Plaintiff sued Defendants for Count 1:  Conspiracy In Restraint Of Trade (15 USC § 15); Count 2:  18 USC § 1346 Theft Of Honest Services /

Mail Fraud; Count 3:  18 USC § 1964 Racketeer Influenced And Corrupt Organizations (RICO); and Count 5:  Civil Conspiracy.

3.     The United States Department of Justice (the **"USDOJ"**) is investigating the allegations on this case.  **Exhibit A, USDOJ letter dated October 15, 2009.**  The USDOJ is authorized to bring causes of action for Counts 1, 2, and 3 and many more causes of action.  Under *15 USC § 4*, the USDOJ may bring equity actions to reform Bishop Estate, such as Count 5 (Civil Conspiracy).  Under *15 USC § 1*, the USDOJ has the ability to fine Bishop Estate $100 million per violation, with 5 trustees (5 violations) fines could be $500 million.

4.     If the USDOJ prevails in an antitrust case, under 15 USC § 16 that victory shall be prima facie evidence for Plaintiff in his case, Plaintiff will only have to show damages which are statutorily trebled.

5.     The Honorable Senior US District Court Judge, Samuel King authored a book known as Broken Trust, which described Bishop Estate (Kamehameha Schools).  Due to Bishop Estate's unprecedented mismanagement, including paying unlawful lobbying of elected officials, Broken Trust stated:

> The real shocker was the IRS' decision to revoke the trust's tax exempt status retroactive to July 1, 1989.  An Arthur Anderson tax accountant estimated that this would cost the trust nearly $1 billion up front, and much more over time.
>
> Soon, however, there was reason for hope.  The IRS extended a highly unusual offer:  officials from the national, regional, and district offices were willing to gather in Los Angeles with the special purpose trustees and there advisors to discuss a way of resolving the matter without hurting Kamehameha Schools.  When that meeting began on April 19, 1999, there were no pleasantries.  One of the special purposes trustees later described it as "something out of a movie" – ten to twelve very serious people on one side of a long table, facing a similar number of equally serious people on the other side.  Marcus Owens, who headed the IRS' Exempt Organization Division at the time, began the meeting by saying he would be doing the talking; the special-purpose trustees were there to listen.
>
> Owens said nobody liked the idea of revoking Bishop Estate's exemption, but the scope and magnitued of abuse were unparalleled.  The IRS was

willing to negotiate anyway, but only if it was assured of fundamental change at Bishop Estate.
*Broken Trust, p. 254-255.*

6.  Bishop Estate's own accountant, Arthur Anderson stated the cost to Bishop Estate could be "in excess of $750,000,000". **Exhibit B, Letter from Arthur Anderson dated August 16, 1999.**

7.  *Broken Trust, pp. 256-257* describes how the State Attorney General (Margery Bronster) who prosecuted the Bishop Estate trustees was in essence fired by Bishop Estate during her investigation. This was done by Bishop Estate using is political connections to block to – reconfirmation of Margery Bronster for a second term as State Attorney General.

8.  *Broken Trust, pp. 274-275* describes how Bishop Estate's interim trustees spent about $1 million to commission a report that justified not suing the removed trustees. It continues describing before the copies of the $1 million report could be made, Bishop Estate's attorneys requested State Court Judge Kevin Chang to place the report under seal, which he did. Although the attorney general's office job was to monitor all charitable trusts, even lawyers from the attorney general were denied further access for the sake of "closure." This was done after reinstatement of Bishop Estate's tax exempt status. Former state Court Judge Kevin Chang is now the Honorable Federal Magistrate Judge Kevin Chang in the US District Court, District of Hawaii.

9.  Ten years ago Bishop Estate's own accountant, Arthur Anderson suggested Bishop Estate's paying a $9 million plus interest as a settlement to the IRS was in the best interests of Bishop Estate. **Exhibit C, Arthur Anderson letter dated August 19, 1999.**

10. *Broken Trust, pp. 279-280* describes how the Hawaii Supreme Court threw out criminal the indictments against removed trustees on procedural grounds in 2002 (after the IRS reinstated Bishop Estate's tax exempt status). Without deciding whether any crimes had or had not been committed, the court sharply criticized the attorney general's office for bringing the charges (Margery Bronster had already been fired) and ruled no new charges could be brought.

11. Broken Trust was authored by the Honorable Samuel P. King, US District Court Judge, District of Hawaii and should be viewed as credible.

12.     The IRS's revocation of Bishop Estate's tax exempt status was pivotal in resolving the Bishop Estate controversy in 1999.  Plaintiff reported Bishop Estate the IRS, seeking to revoke Bishop Estate's tax exempt status.

13.     With different cases by the USDOJ, IRS, and Plaintiff, the controversy has the potential to have duplicative litigation that may tax judicial resources, create inconsistent results (under 15 USC § 16), and produce undue hardship on the parties.

14.     If there are different cases, there may be compliance issues with whistleblower retaliation laws.

15.     Staying the current proceedings to allow the USDOJ and IRS to complete their investigations may produce a consistent result at a lower cost to all parties, minimize duplicate litigation, and minimize inconsistent results.  A unified case may also allow the brokering of a deal to reform Kamehameha Schools to create lasting change.  Such as transforming Kamehameha Schools into a not for profit corporation, with eleven directors, five selected by the state courts and six selected by the Kamehameha Schools alumni.  The reformation of Kamehameha Schools into a not for profit corporation with directors selected by alumni and likely prevent the reoccurrence of what is alleged to have happened to Plaintiff and his brother in Sharon MY Young Revocable Living Trust from occurring again to other families in Hawaii and hopefully create lasting beneficial change for Kamehameha Schools.

### B. Conclusion

16.     For these reasons, Plaintiff moves the Court stay the proceedings until the US Department of Justice and the Internal Revenue Service complete their investigations to prevent duplicative litigation and save judicial resources, prevent hardship and inequality on the moving party if the action is not stayed, and prevent inconsistent judgments.

17.     Plaintiff would pray the Court allow Plaintiff to complete service of the Defendants during this period to perfect this Court's jurisdiction over the parties.

Dated:  West Palm Beach, FL **November 3, 2009**

*/s/ Mark Young*
**MARK W.S. YOUNG**
PLAINTIFF PRO SE
*"Jus est ars boni et aequi"*
"Law is the science of what is good and just"