IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MARK W.S. YOUNG, | ) | CIVIL NO. 09-00403 SOM-BMK |
| | ) | |
| Plaintiff, | ) | ORDER DISMISSING COMPLAINT |
| | ) | |
| vs. | ) | |
| | ) | |
| BISHOP ESTATE; et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER DISMISSING COMPLAINT

I.        INTRODUCTION.

         Plaintiff Mark W.S. Young ("Young") alleges that, while
his mother, Sharon Marie Yust Young ("Mother"), was in Hospice
and on narcotics, Mother decided to make gifts totaling $485,000
to religious groups and advisors from her $1.2 million trust.
See Complaint ¶¶ 37-38 (Aug. 26, 2009).  Exhibit 11 to the
Complaint indicates that Mother amended her will and trust in
June 2004 to make the gifts.  That amendment also states that
Mother would disinherit any beneficiary who challenged the gifts.
Young, who is an active Florida attorney in good standing, is
obviously unhappy with the results of his challenges in state
probate court to these gifts (Case. No. T-05-1-0001).  Young has
named in this federal action everyone and every legal entity
having anything to do with the ongoing state probate case, as
well as individuals and a charitable trust that had no direct

involvement with the probate court's handling of Mother's trust or estate.

Young's Complaint names as Defendants 1) Colleen Hirai, the judge in the underlying state court trust case; 2) Robert Graham, the court-appointed master in the state court case; 3) Graham's law firm, Ashford & Wriston, LLP; 4) James Francis Vrechek, Mother's CPA, who was the trustee of Mother's trust; 5) Jason Tani, Vrechek's attorney in the underlying state probate case; 6) Frank Kanemitsu, an attorney who participated in the underlying state probate case; 7) Ronald R. Sakamoto, another attorney who participated in the underlying state probate case, and 8-13) Kamehameha Schools, fka Kamehameha Schools Bishop Estate, a large land-based charitable trust, and its trustees, Corbett A.K. Kalama, Diane J. Plotts, J. Douglas Keauhou Ing, Nainoa Thompson, and Robert K.U. Kihune.

Purporting to rely on statements from a book co-authored by a law professor and a senior United States district judge, Young's five-count Complaint generally alleges that Kamehameha Schools and its various trustees, along with organized crime, had a corrupting influence on the Hawaii judiciary system. Complaint ¶¶ 24-32. Young accuses Defendants of having engaged in a conspiracy to "rig the state court system to reach conclusions favorable to Bishop Estate Trustees." Id. ¶ 80. Other than Young's speculation that the land trust and its

2

trustees have been conspiring with the state judicial system in general, the Complaint is devoid of any specific conduct by Kamehameha Schools or its trustees that is related to, much less harmed, Young.

Count 1 asserts that all Defendants conspired in restraint of trade in violation of 15 U.S.C. § 15.  Count 2 asserts that Hirai, Graham, Vrecheck, Kanemitsu, and Tani committed theft of honest services using the United States mail in violation of 18 U.S.C. § 1346.  Count 3 asserts that all Defendants violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO").  Count 4 alleges that all individual Defendants violated 42 U.S.C. § 1983, but appears to be limited to asserting a § 1983 claim against Hirai and Graham.  Count 5 alleges that all Defendants engaged in a civil conspiracy.

On September 18, 2009, Hirai and Graham moved to dismiss Young's complaint.  They contend that Young's equitable relief claims are barred by the abstention doctrine articulated in <u>Younger v. Harris</u>, 401 U.S. 37 (1971), and that Young's money damage claims are barred by the Eleventh Amendment, as well as by Hirai's absolute judicial immunity and Graham's quasi-judicial immunity.  On September 22, 2009, Ashford and Wriston

3

substantively joined in the motion,[1] seeking dismissal of all claims asserted against it.

On October 5, 2009, Vrechek filed a motion to dismiss Young's Complaint, arguing 1) that Count 1 does not adequately plead a § 15 violation, 2) that there is no private right of action for the criminal violation(s) asserted in Count 2, and 3) that Count 3 does not adequately plead a RICO violation.  On October 7 and 22, respectively, Ashford & Wriston and Tani joined in Vrechek's motion.  Ashford & Wriston's substantive joinder argues that all claims against it should be dismissed, presumably including the civil conspiracy claim asserted in Count 5.

Local Rule 7.4 requires oppositions to be filed not less than eighteen days before a hearing on a motion.  In this case, the motions to dismiss were scheduled for a hearing on November 9, 2009.  This meant that Young's oppositions to the motions were due no later than October 22, 2009.  Young did not timely file an opposition to Vrechek's motion and/or Ashford & Wriston's substantive joinder, waiting until three business days before the hearing to oppose the motion, thereby depriving Vrecheck and Ashford & Wriston of the opportunity to file a reply.  In his extremely belated opposition, Young argues that counsel for Vrechek has a conflict requiring counsel to be

---

[1]Under Local Rule 7.9, a "substantive joinder" is a joinder based on a memorandum supplementing the motion joined in, as opposed to a bare statement of agreement.

recused.  As an licensed attorney, Young should have known that

such a belated argument should have been raised much earlier,

allowing the court and the parties time to brief and decide the

matter.  Given the belated suggestion of a conflict as well as

Young's minimal brief discussing it, this court would have to

delay the hearing to fully adjudicate whether such conflicts

exist.  Rather than delay the hearing on the motions, this court

instead deems Ashford & Wriston's substantive joinders to be

motions under the circumstances presented here.

As more fully described below, Hirai and Graham's

motion to dismiss, as well as Ashford & Wriston's substantive

joinders, and Tani's joinder are granted without a hearing

pursuant to Local Rule 7.2(d).  Because of the potential

conflicts of interest suggested by Young, this court declines to

rule on Vrechek's motion.  Instead, the court denies it as moot,

given the dismissal of all claims asserted in the Complaint.

Hirai and Graham have Eleventh Amendment immunity from

official capacity claims, if any, asserted against them for money

damages.  Hirai and Graham have judicial immunity with respect to

other claims arising out of or relating to their exercise of

their judicial functions.  Counts 1, 3, 4, and 5 are dismissed as

against all Defendants for failure to assert claims upon which

relief can be granted, while Count 2 is dismissed because there

is no private right of action for such a claim.

On October 8, 2009, Young filed a motion to amend his Complaint (Docket No. 55).  None of the proposed amendments affects the motions currently before this court.  Because this court is dismissing the Complaint, this court denies that motion as moot.  Defendant Frank Kanemitsu's Motion for More Definite Statement (Docket No. 10) is similarly denied as moot.

II.    STANDARD.

Rule 12(b) of the Federal Rules of Civil Procedure reads: "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required.  But a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction . . . (6) failure to state a claim upon which relief can be granted."

A.    Rule 12(b)(1).

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may either attack the allegations of the complaint as insufficient to confer upon the court subject matter jurisdiction, or attack the existence of subject matter jurisdiction in fact.  Thornhill Publ'g Co. v. Gen, Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979).  When the motion to dismiss attacks the allegations of the complaint as insufficient to confer subject matter jurisdiction, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  Fed'n of

African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996). When the motion to dismiss is a factual attack on subject matter jurisdiction, however, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the existence of subject matter jurisdiction in fact. Thornhill, 594 F.2d at 733.

B.   Rule 12(b)(6).

Under Rule 12(b)(6), review is generally limited to the contents of a complaint. Sprewell v. Golden State Warriors, 266 F.3d 979, 988, as amended by 275 F.3d 1187 (9th Cir. 2001); Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996). If matters outside the pleadings are considered, the Rule 12(b)(6) motion is treated as one for summary judgment. See Keams v. Tempe Tech. Inst., Inc., 110 F.3d 44, 46 (9th Cir. 1997); Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996). However, courts may "consider certain materials--documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice--without converting the motion to dismiss into a motion for summary judgment." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003). Documents whose contents are alleged in a complaint and whose authenticity are not questioned by any party may also be considered in ruling on a Rule 12(b)(6) motion to dismiss. See Branch v. Tunnell, 14 F.3d

7

449, 453-54 (9th Cir. 1994), <u>overruled on other grounds as stated in</u> <u>Galbraith v. County of Santa Clara</u>, 307 F.3d 1119, 1125 (9th Cir. 2002).

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. <u>Fed'n of African Am. Contractors</u>, 96 F.3d at 1207. However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. <u>Sprewell</u>, 266 F.3d at 988; <u>Syntex Corp. Sec. Litig.</u>, 95 F.3d 922, 926 (9th Cir. 1996). Additionally, the court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. <u>Sprewell</u>, 266 F.3d at 988.

To survive a Rule 12(b)(6) motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (citations and internal quotations omitted); <u>accord</u> <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) ("the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). While a complaint attacked by a Rule 12(b)(6)

motion to dismiss does not need detailed factual allegations, a
plaintiff's obligation requires more than "labels and
conclusions," and "a formulaic recitation of the elements of a
cause of action will not do." Id. at 1949 (citations and
internal quotations omitted).  A complaint is not sufficient if
it merely makes "naked assertions" that are devoid of "further
factual enhancement." Id.  Dismissal is appropriate under Rule
12(b)(6) if the facts alleged do not state a claim that is
"plausible on its face." Twombly, 550 U.S. at 570.

Dismissal under Rule 12(b)(6) may be based on either:
(1) lack of a cognizable legal theory, or (2) insufficient facts
under a cognizable legal theory.  Balistreri v. Pacifica Police
Dept., 901 F.2d 696, 699 (9th Cir. 1988) (citing Robertson v.
Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir.
1984)).  A motion to dismiss may also be granted if an
affirmative defense or other bar to relief is apparent from the
face of the complaint, such as a statute of limitations.  Imbler
v. Pachtman, 424 U.S. 409 (1976).

III.    THE COMPLAINT IS DISMISSED.

A.    Young Has Not Demonstrated that Edward J. Bybee
and Jerry A. Ruthruff Have A Conflict Requiring
Them to Refrain From Participating in This Case.

Edward J. Bybee and Jerry A. Ruthruff are attorneys for
Vrechek.  In a last-minute, untimely opposition to Vrechek's
motion to dismiss, Young argues that both Bybee and Ruthruff have

a conflict of interest requiring them to recuse themselves from this case.  Young asks this court to force Bybee and Ruthruff to cease participating in this case based on what appears to be an initial consultation Vrechek had with Bybee in 2004.  Although Young should have filed a motion seeking to have Bybee and Ruthruff recused from this case, and although such a motion should have been filed before briefing on the pending motions had concluded, this court nevertheless considers Young's belated request.

On November 29, 2004, Bybee memorialized a conversation he had had with Young.  It appears that Young had discussed with Bybee the possibility that Young would take legal action relating to the handling of Mother's trust.  Bybee told Young in a letter that, without a copy of Mother's trust or the trustee's report, he could say little about the substantive issues Young wanted to discuss.  Bybee's letter told Young that, if his allegations could be proven, the trustee, who was not named, should be removed and sanctioned.  Bybee told Young that it was unlikely that a court would accept his petition for filing and that, at best, the court might appoint a master to investigate his allegations.  Bybee told Young that Bybee charged $200 per hour and required a $2,500 retainer deposit.  He then said, "If you wish to retain my services, let me know, and I will send you a

Retainer Agreement." This letter, by itself, is insufficient to require Bybee and Ruthruff to recuse themselves from this matter.

Bybee says that he has no recollection of having spoken with Young and did not open a file on the matter. See Declaration of Edward J. Bybee ¶¶ 5, 7 (Nov. 5, 2009). Nevertheless, Bybee says that he is withdrawing from representation of Vrechek. Id. ¶¶ 11-12.

Jerry A. Ruthruff's name was listed in the letterhead of the November 29, 2004, letter as being "Of Counsel." Ruthruff says he did not know anything about Young until he reviewed a copy of the present Complaint filed in 2009. See Declaration of Jerry A. Ruthruff ¶¶ 4, 6 (Nov. 5, 2009).

1.   The Present Record Does Not Establish an Attorney-Client Relationship with Bybee.

Rule 1.9(a) of the Hawaii Rules of Professional Conduct prohibits a lawyer who has formerly represented a client in a matter from representing another person in the same or a substantially related matter in which that person's interests are materially adverse to the former client's interest, unless the former client consents after consultation. A district court in Alabama has interpreted a similar provision, noting that the "emerging general rule" is that, for purposes of Rule 1.9(a), an attorney-client relationship can be formed during an initial consultation between a prospective client and an attorney. See Green v. Montgomery County, Ala., 784 F. Supp. 841, 845 (M.D.

Ala. 1992).  The court stated that the test for determining whether an attorney-client relationship has been formed in an initial consultation "is a subjective one and hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention is to seek professional legal advice."  Id. at 845-46 (quotations and citation omitted).  This subjective belief must be reasonable.  If the attorney has made it clear to the would-be client that no attorney-client relationship exists based on the initial consultation and if the evidence reflects that the would-be client should have known that no attorney-client relationship was being formed, then no attorney-client relationship exists.  Id. at 846.

        While Young claims that an attorney-client relationship existed with Bybee, the record is presently insufficient to establish such a relationship.  Young does not say that he subjectively believed that such a relationship was formed or provide any facts indicating that such a belief was reasonable. The November 29, 2004, letter indicates that Young had a conversation with Bybee to discuss removing an unnamed trustee from the Sharon M.Y. Young Revocable Living Trust.  Bybee's letter told Young that Bybee lacked enough information to comment on the substantive issues raised by Young, but that, if Young could prove his allegations regarding the trustee, the trustee

12

should be removed and should be sanctioned.  Finally, Bybee told
Young the terms under which Young could retain him.

It may well be that an attorney-client relationship was
formed during this initial consultation such that Rule 1.9(a)
applies, but the court cannot draw that conclusion without more
information.  As it turns out, this court need not determine that
issue at this time.  The motion to dismiss that Bybee and
Ruthruff filed on Vrechek's behalf was substantively joined in by
Ashford & Wriston.  There is no dispute that Ashford & Wriston
has no such conflict.  In its substantive joinder, Ashford &
Wriston argues that Count 1 (15 U.S.C. § 1) and Count 3 (RICO)
fail to state claims, and that there is no private right of
action for the mail fraud claim asserted in Count 2.
Accordingly, even if the court assumes that Bybee has a conflict
requiring his recusal from this case, this court may nevertheless
dismiss the Complaint as set forth below based on Ashford &
Wriston's substantive joinder.

Under Local Rule 7.9, "Unless otherwise ordered by the
court, whenever an underlying motion is withdrawn, any joinders
are also treated as withdrawn."  The court is not treating
Vrechek's motion as withdrawn.  The court is instead declining
to rule on the merits of Vrechek's motion in light of the
conflict issue belatedly raised by Young.  The joinders are
therefore not treated as withdrawn.  It would be particularly

13

unfair to disregard the joinders under the circumstances here.
Young waited until November 4, 2009, only days before the hearing
on this matter, to raise a conflict issue he knew or should have
known about when Vrechek filed his motion on October 5, 2009.
Because of this unexplained delay, the parties joining in
Vrechek's motion have no time to convert their joinders into
independent motions before the scheduled hearing.  Given this
unusual situation, this court treats the joinders as motions.

>  2.    The Present Record Does Not Establish an
>        <u>Attorney-Client Relationship with Ruthruff.</u>

Relying on the November 2004 letter that is written on
letterhead including Ruthruff's name, Young says that he has an
attorney-client relationship with Ruthruff.  While the letterhead
suggests that Bybee and Ruthruff were in the same law firm in
November 2004, Ruffruff's declaration states that they do not
share office space and that he only receives mail at the suite of
offices Bybee shares with other attorneys.

If the court assumes (without finding) that Bybee and
Ruthruff were in the same firm and that Bybee had represented
Young, Rule 1.9(b) of the Hawaii Rules of Professional Conduct
would prohibit Ruthruff from knowingly representing Vrecheck in
the same or a substantially related matter in which Bybee had
previously represented Young, if Young's interests are materially
adverse to Vrecheck's and Bybee had acquired protected
information from Young that is material to the current matter.

14

However, as noted above, it is not clear from the present record
that Bybee represented Young or acquired protected information
from Young.

Young knew about Ruthruff's participation in this
lawsuit even before Vrechek's motion was filed, as Ruthruff filed
papers on Vrechek's behalf on September 17, 2009.  It may be that
Young did not connect Ruthruff with Bybee until he saw Bybee
himself listed as Vrechek's counsel, but the lateness of Young's
conflict claim has created considerable difficulty for parties
other then Vrechek, as noted above.

As with Bybee, this court need not determine at this
time whether Ruthruff has a conflict requiring his
disqualification from this case.  As set forth below, this court
dismisses the Complaint based on Ashford & Wriston's substantive
joinder seeking dismissal.

> B.    Eleventh Amendment Immunity Bars the Money Damage
>        Claims Against Hirai and Graham in Their Official
>        Capacities.

Under the Eleventh Amendment, a state is immune from
certain actions brought in federal court by her own citizens or
citizens of other states.  Papasan v. Allain, 478 U.S. 265, 276
(1986); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89,
100, 106 (1984); Mitchell v. Los Angeles Cmty. Coll. Dist., 861
F.2d 198, 201 (9th Cir. 1989).  Federal court actions against
agencies or instrumentalities of a state are also barred by the

15

Eleventh Amendment.  Shaw v. State of Cal. Dept. of Alcoholic
Beverage Control, 788 F.2d 600, 603 (9th Cir. 1986).  A suit
against state officials, in their official capacities, is the
same as a suit against the state itself and therefore is subject
to the Eleventh Amendment.  Kentucky v. Graham, 473 U.S. 159,
166-67 (1985).  Unless the state unequivocally waives sovereign
immunity or Congress exercises its power under the Fourteenth
Amendment to override the immunity, the state, its agencies, and
its officials (acting in their official capacities) are immune
from suit under the Eleventh Amendment.  Will v. Michigan Dept.
of State Police, 491 U.S. 58, 66 (1989); Pennhurst, 465 U.S. at
99.

        There has been much confusion over whether Eleventh
Amendment immunity is a component of this court's subject matter
jurisdiction.  Appellate courts have issued seemingly conflicting
statements on this point.  The Supreme Court, for example, has
stated that the "fact that the State appeared and offered
defenses on the merits does not foreclose consideration of the
Eleventh Amendment issue; 'the Eleventh Amendment defense
sufficiently partakes of the nature of a jurisdictional bar' that
it may be raised at any point of the proceedings." Fla. Dept. of
State v. Treasure Salvors, 458 U.S. 670, 683 n.18 (1982) (quoting
Edelman v. Jordan, 415 U.S. 651, 678 (1974)).  The Ninth Circuit
has similarly stated that "Eleventh Amendment sovereign immunity

16

limits the jurisdiction of the federal courts and can be raised by a party at any time during judicial proceedings or by the court sua sponte." Cal. Franchise Tax Bd. v. Jackson (In re Jackson), 184 F.3d 1046, 1048 (9th Cir. 1999). See also Blue v. Widnall, 162 F.3d 541, 544 (9th Cir. 1998); Charley's Taxi Radio Dispatch v. Sida of Haw., 810 F.2d 869, 873 n.2 (9th Cir. 1987).

Other appellate decisions, however, have noted that sovereign immunity may be waived. Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 675 (1991); ITSI TV Prods., Inc. v. Agric. Assocs., 3 F.3d 1289, 1291-92 (9th Cir. 1993); Hill v. Blind Indus. & Servs. of Md., 179 F.3d 754, 760, as amended, 201 F.3d 1186 (9th Cir. 1999). Under this line of cases, Eleventh Amendment immunity is treated as an affirmative defense that the agency claiming immunity has the burden of demonstrating. ITSI, 3 F.3d at 1291-92.

The Ninth Circuit has attempted to reconcile these apparently conflicting cases, calling states' Eleventh Amendment immunity "quasi-jurisdictional." Bliemeister v. Bliemeister (In re Bliemeister), 296 F.3d 858, 861 (9th Cir. 2002). Under Bliemeister, sovereign immunity "may be forfeited where the state fails to assert it and therefore may be viewed as an affirmative defense." Id. Subsequent to Bliemeister, the Ninth Circuit has tacitly approved of applying Rule 12(b)(1) of the Federal Rules of Civil Procedure to a claim of Eleventh Amendment immunity.

17

See <u>Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa County</u>, 343 F.3d 1036, 1040 (9th Cir. 2003).  However, in an unpublished memorandum decision, the Ninth Circuit has also approved of applying Rule 12(b)(6) to a state's claim of Eleventh Amendment immunity.  This court need not decide on the present motion seeking Eleventh Amendment immunity whether to apply Rule 12(b)(1) (facial challenge to subject matter jurisdiction) or Rule 12(b)(6) (failure to state a claim) to Hirai and Graham's motion, as those standards are essentially identical.

It is unclear whether Young is asserting claims against Judge Hirai and court master Graham in their official capacities. However, to the extent the Complaint asserts such claims for money damages, the Complaint is dismissed based on Eleventh Amendment immunity.

C.   Judicial Immunity Bars Claims Against Hirai and
     <u>Graham Arising Out of Their Judicial Functions.</u>

The Complaint may be seeking relief from Hirai and/or Graham that is not barred by the Eleventh Amendment.  For example, Young may be seeking damages against Hirai and Graham in their individual capacities and/or asking that Hirai be ordered to transfer oversight of Kamehameha Schools to Florida, or that Hirai and Graham be declared to have been malicious.  To the extent Young is seeking monetary damages from Hirai and/or Graham in their individual capacities or seeking nonmonetary relief for

18

acts they took in their capacities as judicial officers, they have judicial immunity from such claims.

"Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction[.]" <u>Pierson v. Ray</u>, 386 U.S. 547, 553-4 (1967).  Judicial immunity "is an immunity from suit, not just from the ultimate assessment of damage . . . [and] is not overcome by allegations of bad faith or malice . . . ." <u>Mireless v. Waco</u>, 502 U.S. 9, 11 (1991). Judicial immunity bars the claims in the Complaint that relate to and arise out of Hirai's performance of her duties as a judge. <u>See</u> <u>id.</u>

Similarly, Graham has judicial immunity from the claims in the Complaint that relate to and arise out of his performance of his duties as a special master to Judge Hirai.  There is no dispute that Graham was appointed by Judge Hirai to aid her in handling the claims surrounding Mother's trust. <u>See</u> Complaint ¶ 47 ("Colleen Hirai appointed Attorney Robert Bruce Graham to serve as a 'master', which is a neutral fact gatherer.") and ¶ 48 ("Graham was appointed to investigate two matters: 1) the removal of James Vrechek as trustee, and 2) determine the validity of the deathbed amendments to the Sharon Young trust.").  Having exercised discretionary judgment in his capacity as court-appointed master, Graham has immunity from claims asserting that

he erred in exercising his duties as special master.  See

Atkinson-Baker & Assocs. v. Kolts, 7 F.3d 1452, 1454-55 (9th Cir.

1993) (applying doctrine of absolute quasi-judicial immunity to

bar claims against a special master exercising discretionary

judgment as part of his function as a special master of the

court); Coleman v. Schwarzenegger, 2007 W.L. 4276554 (E.D. Cal.

Nov. 29, 2007) (holding that a receiver who was "imbued with the

power and authority to act in the name of the Court as the

Court's officer" had judicial immunity); Porter v. Montgomery

County Gov't, 2005 WL 4014093, *2 (D. Md., March 15, 2005) ("The

Court further observes that judges and masters are immune from

damage liability for their judicial acts.").

      D.   Count 1 Fails to State a Valid Claim.

     Count 1 asserts a violation of 15 U.S.C. § 15, which

provides that any person whose business or property is injured by

reason of anything forbidden in the antitrust laws may file suit.

Young alleges that Graham willfully destroyed evidence and

threatened sanctions in violation of antitrust laws.  See

Complaint ¶ 95.  Young alleges that all Defendants conspired to

fix prices of trustees' and attorneys' fees.  See id. ¶ 96.

Young also alleges that Defendants conspired to "rig" the state

court system to create caselaw favorable to organized crime,

which he claims had infiltrated Kamehameha Schools.  See id.

¶ 96.

On October 5, 2009, Vrechek moved to dismiss Count 1,
arguing that Young's price-fixing claims asserted in paragraphs
69, 77, and 96 of the Complaint are insufficient to support a
§ 15 violation.  On October 7, 2009, Ashford & Wriston
substantively joined in Vrechek's motion, seeking dismissal of
Count 1.  On November 4, 2009, Young filed an untimely opposition
to Verchek's motion.  <u>See</u> Local Rule 7.4 (requiring oppositions
to motions to be filed not less than 18 days before a hearing).
Despite that untimeliness, this court considers Young's response.
As discussed above, this court does not rule on Young's
suggestion that Verchek's attorneys have a conflict of interest,
but this court grants Ashford & Wriston's request for dismissal
of Count 1.  The Complaint's allegations, which rely on exhibits
attached to the Complaint that actually contradict the Complaint,
cannot be said to support any claim under § 15.

Citing Exhibit 1 to the Complaint, paragraph 69 of the
Complaint alleges that "Graham started by creating a $1000 per
hour price floor with the Attorneys."  However, Exhibit 1 to the
Complaint does not stand for that proposition.  Exhibit 1 is a
preliminary report by Graham, the court-appointed master.  Page 5
of that report states only, "Given the hourly rates of the
lawyers already involved and the potential for more, litigation
could cost the Trust upwards of $1,000 an hour."  Exhibit 1
clearly expresses concern, not some "price floor."  Nothing in

Exhibit 1 supports Young's allegation that various attorneys conspired to set a $1,000 per hour price floor for attorneys' fees.

Paragraph 77 of the Complaint is similarly insufficient to support a § 15 violation.  Paragraph 77 alleges that, based on page 14 of Exhibit 1 to the Complaint, "As agent of [Kamehameha Schools], Graham also engaged in price fixing for trustees['] compensation by telling Vrechek that he could petition the Court for additional compensation above the statutory amount." However, page 14 of Exhibit 1 to the Complaint merely discusses Vrechek's entitlement to fees, noting that Vrechek is entitled to fees in accordance with the statutory schedule and that Vrechek has not sought extraordinary compensation, which Vrecheck could petition the court for if Vrechek thought he was so entitled. Nothing in this statement is contrary to law.  Once again, the actual document attached to the Complaint contradicts Young's allegation of price fixing.

Young's allegation in paragraph 96 of the Complaint is similarly wanting.  That paragraph alleges, "Defendants conspired to fix prices of trustee fees and attorney fees."  That allegation is conclusory and therefore insufficient to defeat a motion to dismiss.  See Sprewell, 266 F.3d at 988.

Citing an August 7, 2008, letter that is attached as Exhibit 6 to the Complaint, Young alleges that Graham willfully

destroyed evidence and threatened sanctions in violation of
antitrust laws.  <u>See</u> Complaint ¶ 95.  However, that letter, sent
by Wayne Nasser of Ashford & Wriston, only stated that Nasser had
reviewed Young's notice to preserve evidence and found it
"spurious."  Nasser stated that Young's demand lacked any legal
or factual specifics supporting it and appeared to be an attempt
to harass or intimidate a court officer.  Nasser's letter told
Young that his "price fixing" claim would presumptively violate
Rule 11 of the Federal Rules of Civil Procedure.  Nasser added,
"Records that are kept in the ordinary course of business will be
retained in accordance with our customary policies."  The letter
told Young he could petition the court if he wanted Graham to
preserve or produce certain documents.  <u>See</u> Complaint, Ex. 6.
Nothing in that letter supports Young's claim that Graham
willfully destroyed evidence or threatened sanctions in violation
of antitrust laws.  To the contrary, Young's claims are once
again based on misrepresentations of the evidence attached to the
Complaint.

   Young alleges that Defendants violated antitrust laws
by conspiring to "rig" the state court system to create caselaw
favorable to organized crime that had infiltrated Kamehameha
Schools.  <u>See</u> <u>id.</u> ¶¶ 80, 82, 96.  Although Young alleges that
Judge Hirai used her position as a judge "to further organized
crime relating to [Kamehameha Schools]," the Complaint does not

allege that Young himself was somehow injured by the so-called "rigging" of the state court system.  At best, the Complaint appears to allege that Defendants created caselaw that made it difficult to remove trustees, including Vrechek.  But persons who are not judges cannot make caselaw, and a judge's creation of caselaw by ruling on a matter cannot be an antitrust violation. There is simply no basis for asserting an antitrust violation here.

Because the allegations contained in Count 1 are insufficient to state a claim upon which relief can be grated, Count 1 is dismissed with respect to all parties.

E.   There is No Private Right of Action Supporting Count 2.

Count 2 alleges that Hirai, Graham, Vrechek, Kanemitsu, and Tani committed mail fraud in violation of 18 U.S.C. § 1346. Young makes the convoluted claim that these individuals had conflicting loyalties and illegally decided that Vrechek could not be removed as trustee of Mother's trust based on moral turpitude because that would have made it easier for the trustees of Kamehameha Schools to be removed based on moral turpitude. Young asserts a mail fraud violation based on the use of the United States mail in connection with his apparently denied request to remove Vrechek as trustee based on moral turpitude. See Complaint ¶¶ 103-08.

24

Ashford & Wriston seeks dismissal of Count 2, arguing that there is no private right of action for violations of the criminal mail fraud statute.  This court agrees and dismisses Count 2 with prejudice with respect to all parties.  <u>See</u> <u>Wilcox v. First Interstate Bank of Oregon, N.A.</u>, 815 F.2d 522, 533 n.1 (9th Cir. 1987) (noting that, other than as a predicate act for a RICO violation, "federal appellate courts hold that there is no private right of action for mail fraud under 18 U.S.C. § 1341."); <u>Marfut v. City of North Port, Fla.</u>, 2009 WL 790111, *1 (M.D. Fla, March 25,2009) ("The Magistrate Judge correctly recommended dismissal with prejudice of Plaintiff s claims for violations of 18 U.S.C. §§ 1341, 1951, and 1346, as these are criminal statutes that do not provide a private right of action."); <u>Drance v. Simpson Thacher & Bartlett</u>, 1997 WL 442071, *6 (S.D.N.Y., Aug. 5, 1997) ("Plaintiff has no private right of action for mail fraud under 18 U.S.C. §§ 1342 and 1346.").  In Count 2, Young is attempting to assert a private right of action for mail fraud, not a RICO claim with mail fraud as a predicate act.  Count 2 is therefore dismissed.

> F.   Count 3 is Dismissed as Violating the Notice
>      Pleading Standard Set Forth in Rule 8(a) of the
>      <u>Federal Rules of Civil Procedure.</u>

Count 3 asserts that all Defendants violated RICO, 18 U.S.C. § 1962.  Ashford & Wriston seeks dismissal of Count 3 based on a failure to comply with this court's standing order

regarding RICO claims and based on a failure to state a claim upon which relief can be granted.

To the extent Ashford & Wriston seeks dismissal based on Young's failure to comply with this court's general order regarding a RICO statement, the motion is denied.  In Wagh v. Metris Direct, Inc., 363 F.3d 821, 828 (9th Cir. 2003), overruled on other grounds, Odom v. Microsoft Corp., 486 F.3d 541, 551 (9th Cir. 2007) (en banc), the Ninth Circuit stated: "The use of RICO Standing Orders to compel plaintiffs to produce detailed RICO Case Statements, which are then treated by the district court as part of that party's pleadings, can in certain circumstances require far more information from plaintiffs than is required under either Rule 8(a) or 9(b) of the Federal Rules."  Under the circumstances presented here, the court declines to dismiss the Complaint because of Young's failure to comply with this court's general order regarding a RICO statement.

However, to the extent Ashford & Wriston seeks dismissal based on Young's failure to adequately plead a RICO claim, the motion is granted, as Count 3 fails to satisfy even the minimal pleading requirements under Rule 8(a)(2) of the Federal Rules of Civil Procedure.  Count 3 does little more than allege in conclusory fashion that Defendants violated RICO. Count 3 appears to be asserting violations of 18 U.S.C. §§ 1962(a) and (c) by alleging:

> Defendants received any income derived,
> directly or indirectly, from a pattern of
> racketeering activity or through collection
> of an unlawful debt in which such person has
> participated as a principal or acquired any
> interest in or control of any enterprise
> which is engaged in, or the activities of
> which affect, interstate or foreign commerce
> or[/]and derive income indirectly through a
> pattern of racketeering or employed by or
> associated with any enterprise engaged in, or
> the activities of which affect, interstate or
> foreign commerce, to conduct or participate,
> directly or indirectly, in the conduct of
> such enterprise's affairs through a pattern
> of racketeering activity or collection of
> unlawful debt or conspire to violate any
> provision of 18 USC 1962.

These allegations are insufficient because they only roughly track some of the language of §§ 1962(a) and (c). The allegations do not allege any factual detail about the alleged enterprise. Count 3 therefore lacks factual allegations that "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact." Twombly, 550 U.S. at 555; accord Iqbal, 129 S. Ct. at 1949.

Young's conclusory allegations are nothing more than a "formulaic recitation" of what Young perceives as the elements § 1962 claims. Iqbal, 129 S. Ct. at 1949. They do not allow this court to draw the reasonable inference that Defendants are liable for RICO violations. See Iqbal, 129 S. Ct. at 1949; Twombly, 550 U.S. at 555. Nor can Defendants be expected to guess what actions Young may have in mind. Count 3 is dismissed.

27

G.   <u>Count 4 is Dismissed.</u>

Count 4 asserts a violation of 42 U.S.C. § 1983, which

provides:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of
> any State or Territory or the District of
> Columbia, subjects, or causes to be
> subjected, any citizen of the United States
> or other person within the jurisdiction
> thereof to the deprivation of any rights,
> privileges, or immunities secured by the
> Constitution and laws, shall be liable to the
> party injured in an action at law, suit in
> equity, or other proper proceeding for
> redress . . . .

Section 1983 therefore imposes two essential proof requirements

upon a claimant: 1) that a person acting under color of state law

committed the conduct at issue, and 2) that the conduct deprived

the claimant of some right, privilege or immunity protected by

the Constitution or laws of the United States.  <u>Leer v. Murphy</u>,

844 F.2d 628, 632-33 (9th Cir. 1988).

Although the Complaint indicates that Count 4 is

asserted against all the individual Defendants, it must be

limited to Judge Hirai and court-appointed master Graham, as they

are the only Defendants who could be said to have been acting

"under color of state law."  Moreover, it can only be asserted

against Judge Hirai and Graham in their individual capacities.

<u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 71 (1989)

(neither a state nor its officials acting in their official

capacities are considered "persons" for purposes of § 1983).

Young's conclusory allegations do not allow this court to draw the reasonable inference that either Hirai or Graham is liable for a § 1983 violation.  See Iqbal, 129 S. Ct. at 1949; Twombly, 550 U.S. at 555.  The Complaint lacks sufficient factual detail to put either Defendant on notice of what was done to cause a deprivation of a federal constitutional or statutory right. Accordingly, Count 4 is dismissed.

Even if the Complaint could be construed as alleging a due process violation based on a purported decision or recommendation that moral turpitude was not a basis for removing the trustee in issue, Count 4 would fail.  Judge Hirai and court master Graham have judicial immunity, as discussed above.

Moreover, this court will not interfere with Judge Hirai's and the state court's ongoing adjudication of state-court trust issues.  See Younger v. Harris, 401 U.S. 37 (1971) (articulating a "federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances."); Beltran v. California, 871 F.2d 777, 781 (9th Cir. 1988) (holding that, under Younger and its progeny, abstention is appropriate in favor of a state proceeding if: 1) the state proceedings are ongoing; 2) the proceedings implicate important state interests; and 3) the state proceedings provide an adequate opportunity to raise federal questions.). Young's remedy is to appeal Judge Hirai's rulings through the

29

Hawaii appellate court system, not to this court.  See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482-86 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923)

  H. Count 5 Fails to Allege a Valid Claim.

  Count 5 alleges that Defendants engaged in a civil conspiracy.  See Complaint ¶ 118 ("Two or more of the Defendants formed a conspiracy by a concerted action to accomplice [stet] a criminal or unlawful purpose, or to accomplish some purpose not in itself unlawful by criminal or unlawful means.").  Ashford & Wriston argues that Count 5 insufficiently alleges a civil conspiracy claim.  Because this court agrees that Count 5 is insufficiently pled, Count 5 is dismissed.

  Hawaii courts have stated that "the accepted definition of a conspiracy is a combination of two or more persons or entities by concerted action to accomplish a criminal or unlawful purpose, or to accomplish some purpose not in itself criminal or unlawful by criminal or unlawful means."  Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co., 91 Haw. 224, 252 n.28, 982 P.2d 853, 881 n.28 (1999), superseded by statute on other grounds as stated in Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n, 113 Haw. 77, 148 P.3d 1179 (2006).  This court has therefore stated that "the common law tort of civil conspiracy has three elements: (1) the formation of a conspiracy; (2) wrongful conduct in furtherance of the conspiracy, i.e., an actionable claim based upon deceit; and

(3) damage."  <u>Siu v. Alwis</u>, 2009 W.L. 1789319 (D. Haw. June 18, 2009).

Paragraph 80 of the Complaint alleges that Defendants "engaged in a conspiracy in restraint of trade to rig the state court system to reach conclusions favorable to [Kamehameha Schools] trustees, such as creating caselaw making it difficult to remove trustees."  Young appears to be averring that Judge Hirai and Graham, the court-appointed master, have decided that moral turpitude is an insufficient reason to remove a trustee and that Hirai and Graham made this ruling to curry favor with Kamehameha Schools by making it more difficult to remove the trustees of Kamehameha Schools.  This is insufficient to allege a valid civil conspiracy claim.

As set forth above, Judge Hirai and Graham, to the extent they are sued in their individual capacities, are immune with respect to this claim.  Moreover, there is no allegation concerning conduct on the part of most Defendants with respect to Count 5.  The Complaint does not allege actual facts supporting an inference of any improper conduct on the part of Ashford & Wriston, Kamehameha Schools, the trustees of Kamehameha Schools, or the attorneys involved with the underlying state probate action.  It is therefore a mystery why these individuals and entities are named as Defendants in Count 5.  Nor is there a sufficient allegation that Young suffered harm due to the alleged

civil conspiracy.  At most, Young disagrees with the state

probate court's supposed ruling declining to remove a trustee

based on moral turpitude.  But Young does not sufficiently allege

how the decision not to remove Vrechek harmed Young.

Accordingly, Count 5 is dismissed.

IV.      <u>CONCLUSION.</u>

         For the reasons set forth above, this court dismisses

the Complaint in its entirety.  Young may seek leave to file an

Amended Complaint by filing an appropriate motion with the

Magistrate Judge assigned to this case no later than November 23,

2009.  In setting this deadline, this judge makes no suggestion

as to whether any such motion should be granted.  Any motion to

file an amended complaint to cure the deficiencies set forth in

this order shall be accompanied by a proposed amended complaint.

If Young does not file such a motion by that date, the Clerk of

Court is directed to enter judgment in favor of Defendants and to

close this case on or after November 24, 2009.  If Young timely

files such a motion, the Clerk of Court is directed to enter

judgment and close this case only if the motion is ultimately denied.  If such a motion is granted, no judgment will be entered until the amended complaint is adjudicated.

This order disposes of Hirai and Graham's motion to dismiss, Ashford & Wriston's substantive joinders, and Tani's joinder.  Given this order, all other pending motions are denied as moot.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 6, 2009.



    /s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

Young v. Bishop Estate, et al.; Civil No. 09-00403 SOM/BMK; ORDER DISMISSING COMPLAINT