# COPY

FIRST CIRCUIT COURT
STATE OF HAWAII
FILED

2008 APR 25  AM 9: 31

K. OPEDAL
CLERK

**Mark WS Young**
4870 127th Trail N
West Palm Beach, FL 33411- 9066
Telephone No.: 561-784-2322
Beneficiary

**Limited / Special Appearance:**
**Arthur Ross, Attorney**
841 Bishop St #2115
Honolulu, HI 96813

## IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

## STATE OF HAWAII

| | |
|---|---|
| In the Matter of the SHARON M.Y. YOUNG REVOCABLE LIVING TRUST AGREEMENT dated April 28, 1995 | CASE NO. T-05-1-0001 TRUST PROCEEDING<br><br>**BENEFICIARY MARK YOUNG'S OBJECTION TO REPORT OF THE MASTER CONCERNING PETITION CHALLENGING THE SECOND AND THIRD AMENDMENTS [Filed July 15, 2006] FILED FEBRUARY 29, 2008 AND CERTIFICATE OF SERVICE.** |

## BENEFICIARY MARK YOUNG'S OBJECTION TO REPORT OF THE MASTER CONCERNING PETITION CHALLENGING THE SECOND AND THIRD AMENDMENTS [Filed July 15, 2006] FILED FEBRUARY 29, 2008.

Beneficiary Mark Young (**"Beneficiary"**) objects to Report of the Master Concerning Petition Challenging the Second and Third Amendments [Filed July 15, 2006] Filed on February 29, 2008.

### SUMMARY OF OBJECTION

- Master ignored controlling Hawaii law that gift to a religious advisor is presumed the product of undue influence, instead Master relies upon secondary sources.
- Eckankar Church failed to show clear and convincing evidence to rebut presumption of undue influence, thus, the deathbed amendments are void.

1

Plaintiff's
Exhibit **5**

- Master failed to follow statutory mandate to act as a neutral fact gather, instead Master had a conflict of interest and performed little or no investigation and expected the facts to find him.
- Master has a conflict of interest; Master's acknowledging the common law presumption that a testamentary gift to a religious advisor is the product of undue influence would hurt his client's (the Catholic Church) financial interest. The Roman Catholic Church is one of the largest religious institutions in the world.

## BACKGROUND

1. Sharon Young ("**Settlor**") was dying of lung cancer in a hospice facility. Settlor suffered from heart valve regurgitation, so Settlor's lungs did not receive proper blood flow from the heart. Settlor's lung cancer hampered Settlor's ability to breath.

2. Settlor was bedridden, suffering from oxygen deprivation, and on narcotic painkillers. Settlor had delusions that light was oozying out of her eyes.

3. Hawaii Satsang Society aka the Eckankar Church (the "**Church**") had monthly meetings, requiring periodic dues. However, when Settlor was dying on her deathbed, members of the Church became frequent visitors.

4. In Settlor's last week of life, while she lay dying on her deathbed in hospice in a weakened state, Settlor gave $485,000 to religious advisors. Settlor had never made any large gifts to the Church when Settlor was healthy.

5. Settlor's signature looked unrecognizable and very faint on the Deathbed Amendments. Settlor signed two different names on the same page of the same document.

6. Eckankar's religion is cult-like. Eckankar is a secret society.[1] Members who reveal the secrets of the Eckankar Church have their eyes and tongue removed. Members who leave Eckankar suffer a worse fate – loss of health and rapid death. According to Eckankar, Eckankar leader has the power to destroy nations and any form of life.

7. ***Members who reveals the secrets of his initiation "shall be deprived of his sight and tongue in order to never again be able to say anything about the degrees of initiation in ECKANKAR."[2] "[Eckankar members] must have the***

---

[1] *Eckankar's Shariyat Ki Sugmad: Book 2, p. 232*
[2] *Eckankar's Shariyak-Ki-Sugmad: Book 2, p. 177-178.*

2

*inspired faith, that zealot's drive to serve the cause of ECK without any question.*[3] Eckankar members also known as "chelas" cannot resign without risk of death. For chelas who leave Eckankar *"spiritual decay sets in immediately, affecting the health, material life, and spiritual life, and brings death more swiftly."*[4] Chelas must give complete obedience to the "Mahanta" also known as the Living ECK Master is the spiritual leader of Eckankar. Harold Klemp is Eckankar's current Mahanta. The Mahanta has super natural powers *"the Mahanta is the most powerful being within the universe of the SUGMAD. With a flick of his finger he can create or destroy nations and any form of life."*[5]

## CERTIFICATE OF SERVICE INCONSISTENCIES

8.    Based on the certificates of service filed by different parties, not every party received all of the pleadings. This oversight may affect the legitimacy of the proceedings.

## GIFTS TO RELIGIOUS ADVISORS ARE PRESUMED THE PRODUCT OF UNDUE INFLUENCE UNDER HAWAII COMMON LAW

9.    *HRS §1-1* expressly adopts the common law of England and American Law.[6] *HRS §626-1: Rule 202* requires mandatory judicial recognition of common law.[7] Ancient English statutes are part of common law of Hawaii, including the Statute of Mortmain.[8] Trust interpretation is guided by common law interpretation of wills.[9]

---

[3] *Eckankar's Shariyak-Ki-Sugmad: Book 2,* p. 151.
[4] *Eckankar's Shariyak-Ki-Sugmad: Book 2,* p. 197.
[5] *Eckankar's Shariyak-Ki-Sugmad: Book 2,* p. 198.
[6] *HRS §1-1* "The common law of England, as ascertained by English and American decisions, is declared to be the common law of the State of Hawaii in all cases, except as otherwise expressly provided by the Constitution or laws of the United States, or by the laws of the State, or fixed by Hawaiian judicial precedent, or established by Hawaiian usage..."
[7] *HRS 626-1: Rule 202(b)* "Mandatory judicial notice of law. The court shall take judicial notice of (1) common law..."
[8] English statute of 13 Elizabeth is a part of the common law of Hawaii. *Dee v. Foster,* 21 Haw. 1 (1912). Similarly, Hawaii's common law includes *The Statute For Religious Men* is commonly known as the *Statute of Mortmain,* which *voided gifts to churches and religious advisors. 7 Edw. I. (1279 AD)*
[9] "When construing a trust, this court is guided by principles relating to the interpretation of trusts as well as those relating to the interpretation of wills." *In re Medeiros Trust and Life Ins. Trust,* 105 Haw. 284, 288, 96 P.3d 1098, 1102 (2004).

10.   Under common law, a presumption of undue influence arises upon a showing that a principal beneficiary under the will who stands in a confidential relationship.  The confidential relationships include attorney-client, priest-parishioner, doctor-patient relationships.   In 1883 the US Circuit Court (Court of Appeals) declared, **"PRESUMPTION OF UNDUE INFLUENCE. The law presumes that undue influence has been used where a patient makes a will in favor of his physician, a client in favor of his lawyer, a ward in favor of his guardian, or any person in favor of his priest or religious adviser, or where other close confidential relationships exist."** [Emphasis added][10]  According to Sheperd's, this case (*Thompson v. Hawks*) was cited by six other jurisdictions.[11]   **Under Hawaii common law, a testamentary gift to a person in a confidential relationship with the testator is presumed the product of undue influence, in all likelihood, the presumption must be rebutted by clear and convincing evidence.**

11.   **The presumption of undue influence for religious advisors is widely accepted.**  In January 6, 1892, the California Supreme Court presumed undue influence based on religious advisor relationship and voided deeds benefiting the Roman Catholic church, the Court declared,

> **That the influence which the spiritual adviser of one who is about to die has over such person is one of the most powerful that can be exercised upon the human mind, especially if such mind is impaired by physical weakness, is so consonant with human experience as to need no more than its statement**; and in any transaction between them wherein the adviser receives any advantage, **a court of equity will not enter into an investigation of the extent to which such influence has been exercised.   Any dealing between them under such circumstances will be set aside as contrary to all principles of equity, whether the benefit accrue to the adviser or to some other recipient who, through such influence, may have been made the beneficiary of the transaction.   These principles have been so**

---

[10] *Thompson v. Hawks,* 14 F. 902; 1883 U.S. App. LEXIS 2553; 11 Biss. 440
[11] **U.S. Circuit Court Of Appeals**:  Ralston v. Turpin, 25 F. 7, 23, 1885 U.S. App. LEXIS 1815 (C.C.D. Ga. 1885);  **Indiana Supreme Court**:  Steinkuehler v. Wempner, 169 Ind. 154, 165, 81 N.E. 482, 486, 1907 Ind. LEXIS 43, 15 L.R.A. (n.s.) 673 (1907) LexisNexis Headnotes HN2 ;  **Nebraska Supreme Court**:  McClary v. Stull, 44 Neb. 175, 191, 62 N.W. 501, 505, 1895 Neb. LEXIS 51 (1895) LexisNexis Headnotes HN2 ;  **New Jersey**: Middleditch v. Williams, 45 N.J. Eq. 726, 736, 17 A. 826, 830, 1889 N.J. Prerog. Ct. LEXIS 23, 4 L.R.A. 738 (Prerog. Ct. 1889) LexisNexis Headnotes HN2 ;  **New York:** In re Dunham's Will, 1 N.Y.S. 120, 1888 N.Y. Misc. LEXIS 1216, 48 Hun 618 (N.Y. Sup. Ct. 1888) LexisNexis Headnotes HN3;  **Washington Supreme Court**:  In re Hanson's Estate, 87 Wash. 113, 123, 151 P. 264, 268, 1915 Wash. LEXIS 1072 (1915) LexisNexis Headnotes HN1, HN2

invariably announced whenever the question has arisen, that a mere reference to the authorities will suffice. (Norton v. Relly, 2 Eden, 286; Huguenin v. Baseley, 14 Ves. 273; Thompson v. Heffernan, 4 Dru. & War. 291; Dent v. Bennett, 4 Mylne & C. 269; In re Welsh, 1 Redf. 246; Richmond's Appeal, 59 Conn. 226; Ford v. Hennessy, 70 Mo. 580; Pironi v. Corrigan, 47 N. J. Eq. 135; Connor v. Stanley, 72 Cal. 556; 1 Am. St. Rep. 84; 1 Bigelow on Fraud, 352; Story's Eq. Jur., sec. 311.) [Emphasis added.]

*Ross v. Conway*, 92 Cal. 632, 636-637; 28 P. 785, 786; 1892 Cal. LEXIS 771

12.   A court in equity will not consider the amount of influence exercised by religious advisors – any influence by Settlor's religious advisor prohibits rebuttal of the undue influence presumption and voids the gift (unclean hands doctrine).   Under *Ross v. Conway*, the undue influence destroys any benefit to the advisors or other parties through the transaction – the entire testamentary document is voided.  In this case, the Second and Third Amendments are voided if Church cannot rebut the undue influence presumption.

13.   In the present case, **the Hawaii Sat Sang Society ("Church") was Sharon Young's ("Settlor") religious advisor, creating the presumption of undue influence.**  Settlor gifted Church $425,000 while Settlor was literally on her deathbed in hospice suffering from terminal lung cancer a mere seven days before Settlor's death. **The Church was Settlor's religious advisor, so the gift to the Church creates the undue influence presumption. The burden shifts to the Church to rebut the undue influence presumption.**

14.   Similarly, Ansara Sayers, John Chamberlain and Jane Ryburn were also Settlor's religious advisors.  Jane Ryburn disclaimed her gift.  The religious advisors gifts are presumed the product of undue influence.  If the Church is unable to rebut the undue influence presumption, the Church's undue influence invalidates the Second and Third Amendments, so the additional analysis for the other religious advisors may not be necessary.

## CHURCH FAILED TO SHOW CLEAR AND CONVINCING EVIDENCE TO REBUT PRESUMPTION OF UNDUE INFLUENCE.

15.   **Issue:  Whether the Church rebutted by clear and convincing evidence the common law presumption of undue influence created by the confidential**

relationship of a religious advisor / religious devotee, where Church provided Church members' self-serving statements and drafting attorney's self serving exculpatory statements to avoid liability when sued for negligence.

16.     Under Hawai'i law, **"clear and convincing"** evidence is "defined as an intermediate standard of proof greater than a preponderance of the evidence, but less than proof beyond a reasonable doubt required in criminal cases. **This standard requires "that degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established, and requires the existence of a fact be highly probable."** *Tauese v. State*, 113 Haw. 1, 37; 147 P.3d 785, 820 (Haw. 2006) [Citations omitted, Emphasis added]

17.     Master's Preliminary Report, page 17, dated 8/26/05 stated, **"Simply stated, the gift [to the Church] is not above suspicion." The Church failed to rebut that suspicion by clear and convincing evidence.** The Church failed to show Sharon Young made any large *inter vivos* gifts to the Church. Although not necessarily in the same room, the Church also had contact with Settlor during the period testamentary documents were drafted.

18.     Master relies upon drafting attorney's self-servign statements made when sued in tort. The trial court applied a six-factor balancing test, when drafting attorney moved for summary judgment. The trial court was required to view the facts in the light most favorable to the non-moving party (Beneficiary) when balancing the factors. Although the trial court granted the drafting attorney summary judgment, Beneficiary contends that the trial court applied the wrong standard by failing to view the facts in the light most favorable to Beneficiary when applying the six factor balancing test.

19.     Under HRS §1-1, the cited ancient common law cases are legal binding precedence. Beneficiary requests judicial notice of the common law. *HRS §626-1: Rule 202* requires mandatory judicial notice of common law. Therefore the Church is presumed to have exercised undue influence on Settlor. **The burden shifts to the Church and religious advisors to rebut the presumption of undue influence.**

20.     Any influence by a religious advisor is sufficient; due to the confidential relationship of a religious advisor, the Court will not examine the degree of undue influence is not necessary. **It is undisputed that the Church had contact with the Settlor in the week of Settlor's drafting the testamentary instruments, showing influence. This is sufficient to prevent Church from rebutting presumption of undue influence. As Settlor's religious advisors, the Court will not examine the**

degree of influence – any influence by the religious advisors prohibits the gift in equity. Thus, the Church failed to rebut the presumption of undue influence by clear and convincing evidence. Thus, the Second and Third Amendments in their entirety are void.

## MASTER FAILED TO FOLLOW STATUTORY MANDATE TO ACT AS A NEUTRAL FACT GATHER, INSTEAD MASTER PERFORMED LITTLE OR NO INVESTIGATION AND EXPECTED THE FACTS TO FIND HIM

21. The issue is whether Master breached the statutory mandate for the master to be a neutral fact gather, where acknowledging gifts to religious advisors are presumed invalid is contrary to the interest's of Master's paying client (the Roman Catholic Church) and Master failed to properly gather facts. **Master was appointed under to serve as the "eyes and ears of the court" pursuant to** *Hawaii Probate Rule 29. Hawaii Probate Rule 29 Commentary states, "the master serves as the eyes and ears of the court, and therefore should review the entire scope of the fiduciary's performance during the accounting period pursuant to the governing instrument. In order to properly fulfill the obligation, the master is granted broad access to the records and staff of the fiduciary."*

22. **The term "eyes and ears of the court" is a term of art meaning "the court's 'eyes and ears,' a neutral information gatherer with loyalties to no one but the court,"** *US v. Espalin*, 350 F.3d 488, 494 (6th Cir. 2003). *US v. Burnam*, 2006 U.S. App. LEXIS 21205, (3rd Cir. 2006) states, "confidential adviser to the court, . . . the court's 'eyes and ears', a neutral information gatherer **with loyalties to no one but the court."** citing *United States v. Reyes, 283 F.3d 446, 455 (2d Cir. 2002), US v. Aspinall,* 389 F.3d 332, 349 (2nd Cir. 2004) has similar quote also citing *Reyes. Wisconsin v. Grothmann,* 724 N.W.2d 704 (Wis. Ct. App. 2006) provides similar language, about the term of art "eyes and ears of the court." These cases involve a probation officer as a confidential advisor to the Court, serving as the eyes and ears of the court, performing neutral, independent fact gathering. Similarly, the term "eyes and ears of the court" is a term of art in *HPR 29* also means a neutral information gatherer with loyalties to no one but the court. A master is an neutral investigator with loyalties to noone but the court. Due to a private attorney's potential conflicts of interests, government attorneys and police officers are less likely to have loyalties to parties other than the court. The Master

must be a truly neutral party to investigate the allegations in the case for the Court. The term "neutral fact gather" includes two parts; 1) a master must be neutral and 2) the master must gather facts. The Master failed on both accounts.

23.    **MASTER APPEARS TO HAVE LOYALTIES TO PARTIES OTHER THAN THE COURT.**    The Master, like a judge, is required to be neutral and avoid even the appearance of impropriety. Master is a shareholder of the law firm of Ashford & Wriston. Master's status as a shareholder is highly influenced by Master's ability to retain paying clients. The Roman Catholic Church of Hawaii (the **"Catholic Church"**) is the Master's client. **See Exhibit 1, Ashford & Wriston Website.**    Attorneys are their client's advocate and champion; Attorneys must exercise their best efforts to zealously advocate their client's interests. The Roman Catholic Church is one of the world's largest religious institutions and benefits from follower's testamentary gifts. The Catholic Church would be harmed if this Court recognized Hawaii's common law presumption of undue influence.

24.    The Master acknowledging gifts to religious advisors are presumed invalid is contrary to the Catholic Church's financial interests. The Catholic Church is Master's client. The Catholic Church would probably not appreciate their attorney recognizing the common law presumption that testamentary gifts to the Catholic Church are presumed invalid. Recognizing the common law presumption would likely cost the Catholic Church millions of dollars.

25.    Master overlooks Eckankar's teachings of undue because the Catholic Church's own teachings show a history of punishment for disobedience. For instance, the Catholic Church's teachings in the *Bible, Numbers: 15:32-36* had a man was stoned to death for gathered firewood on the Sabbeth to keep his family warm. The Bible also preaches hell and brimstone for non-belivers. The Bible instructs a person to gouge their own eye out if it causes them to sin. *Bible, Matthew 5:29* Master's using Eckankar teaching against Eckankar would hurt Master's own client, the Catholic Church. Thus, the Master has a conflict.

26.    Although Master was required to be neutral, Master acted in a manner to benefit his client, the Catholic Church. The reason is obvious; if the Catholic Church saw the Master as the party costing it millions of dollars, the Catholic Church would likely fire the Master as its attorney. Loss of the Catholic Church and other clients may cost Master his partner status in Ashford & Wriston. This creates conflicting loyalties for the Master between acknowledging the common law or advocating on behalf of Master's client. The

8

Master having a client that can be adversely affected by a ruling in favor of one party creates the impression of impropriety. The Master, like a judge, must be neutral and should avoid even the appearance of impropriety.

27.     Master did little or no investigative fact gathering regarding the influences on the Testator's susceptibility to undue influence; Master instead relied on information provided to him. Although Master did little or no investigative fact gathering regarding the influences on the Testator's susceptibility to undue influence, Master extended significant effort in researching the law to benefit his client, the Catholic Church to try to rebut the common law presumption of undue influence.

28.     The common law, as adopted by the Hawaii Legislature in *HRS §1-1*. Master attempts to downplay the significance of the US Circuit Court's decision as a trial court's decision. However, Hawaii's legislature did not distinguish trial court common law from appellate common law in *HRS §1-1*.[12] England's Statute of Mortmain is also adopted by HRS §1-1.[13] Master's research attempts to rebut the common law presumption that testamentary gifts to religious advisors are presumed invalid as the product of undue influence. Master's use of secondary legal sources to attempt to rebut primary law is indicative Master is less than neutral.

29.     **Master's report is resembles an argument brief for his client, the Catholic Church. Master has a conflict of interest; recognizing Hawaii's common law presumption that gifts to religious advisors are presumed invalid would harm Master's client, the Catholic Church.** Master is the attorney for the one of the largest churches in the world, the Roman Catholic Church. The Master recognizing the presumption of undue influence to gifts to his client, would be against his client's best interests. Master acting against his client's best interests would likely anger his client and as a result, he may lose that client and similarly situated clients.

30.     If Master's actions result in the loss of the Roman Catholic Church as a client for his law firm, it may endanger the Master's status as a partner in the law firm of Ashford &

---

[12] *HRS §1-1* states, "The common law of England, as ascertained by English and American decisions, is declared to be the common law of the State of Hawaii in all cases, except as otherwise expressly provided by the Constitution or laws of the United States, or by the laws of the State, or fixed by Hawaiian judicial precedent, or established by Hawaiian usage..." Master's research attempts to rebut the presumption that testamentary gifts to religious advisors are presumed invalid as the product of undue influence.

[13] English statute of 13 Elizabeth is a part of the common law of Hawaii. *Dee v. Foster,* 21 Haw. 1 (1912). *The Statute For Religious Men* is commonly known as the *Statute of Mortmain,* which *voided gifts to churches and religious advisors. 7 Edw. I. (1279 AD)*.

Wriston. Thus, recognizing the presumption that gifts Hawaii's common law would adversely affect the Master's personal interest.

31.     However, Master does not rebut the other six jurisdictions that cite the case.[14]

32.     **MASTER DID NOT GATHER INFORMATION.** Master was appointed as a master pursuant to HPR 29 to be the eyes and ears of the Court. Master in charge of investigating the allegations in the case to be **"the court's 'eyes and ears,' a neutral information gatherer with loyalties to no one but the court,"** US v. Espalin, 350 F.3d 488, 494 (6th Cir. 2003). Instead of gathering evidence as "the eyes and ears of the court," the Master acted as a magistrate judge; except as to avoiding the appearance of impropriety.[15]

33.     Rather than contact beneficiaries, Master states, "The Yusts have not responded to the July 15 Petition." Master's Report, page 3. Master did not contact an independent doctor to review the medical files. Furthermore, there is no indication Master contacted the Hospice facility or the Hospice staff to gather more information or facts other than Beneficiary provided to him. Although Master did little or no investigative fact gathering regarding the influences on the Testator's susceptibility to undue influence, Master extended significant effort in researching the law to benefit his client, the Catholic Church to try to rebut the common law presumption of undue influence.

34.     The Court should note the Affidavit of Dr. Patricia Lanoie Blanchette, MD, MPH ("Dr. Blanchette"). After reviewing Settlor's medical records, Dr. Blanchette opined in Para. 9 "Based on the documents reviewed, and my education, training, background, and experience, **it is my professional opinion to a reasonable degree of medical probability, that because of her serious decline in physical and cognitive functioning in the advanced stages of a rapidly progressive terminal illness, Mrs.**

---

[14] **U.S. Circuit Court Of Appeals:** Ralston v. Turpin, 25 F. 7, 23, 1885 U.S. App. LEXIS 1815 (C.C.D. Ga. 1885); **Indiana Supreme Court:** Steinkuehler v. Wempner, 169 Ind. 154, 165, 81 N.E. 482, 486, 1907 Ind LEXIS 43, 15 L.R.A. (n.s.) 673 (1907) LexisNexis Headnotes HN2 ; **Nebraska Supreme Court:** McClary v. Stull, 44 Neb. 175, 191, 62 N.W. 501, 505, 1895 Neb. LEXIS 51 (1895) LexisNexis Headnotes HN2 ; **New Jersey:** Middleditch v. Williams, 45 N.J. Eq. 726, 736, 17 A. 826, 830, 1889 N.J. Prerog. Ct. LEXIS 23, 4 L.R.A. 738 (Prerog. Ct. 1889) LexisNexis Headnotes HN2 ; **New York:** In re Dunham's Will, 1 N.Y.S. 120, 1888 N.Y. Misc. LEXIS 1216, 48 Hun 618 (N.Y. Sup. Ct. 1888) LexisNexis Headnotes HN3; **Washington Supreme Court:** In re Hanson's Estate, 87 Wash. 113, 123, 151 P. 264, 268, 1915 Wash. LEXIS 1072 (1915) LexisNexis Headnotes HN1, HN2

[15] "Exhibit B Revised Code of Judicial Conduct:" Canon 2 – A judge shall avoid impropriety and the appearance of impropriety in all of the judge's activities.

**Sharon MY Young would have been particularly susceptible to undue influence and did not have testamentary capacity in June, 2004."** [Emphasis added] Dr. Blanchette founded a geriatric program at the University of Hawaii which developed into the Department of Geriatric Medicine at the John A. Burns School of Medicine. Dr. Blanchette serves as Professor and Chair of that Department.

35.     Master failed to investigate the allegations in the case. For example, Master failed to contact beneficiaries Maria Beth Yust and Paul Yust in his factual investigation. Master probably failed to contact other beneficiaries. Master probably failed to contact St Francis Hospice. Master failed to investigate whether Sharon Young made any large *intervivos* gifts to the Church. Simply put, the Master failed to act as the eyes and ears of the Court.


**MASTER HAS A CONFLICT OF INTEREST – ACKNOWLEDGING PRESUMPTION OF UNDUE INFLUENCE BY RELIGIOUS ADVISORS IS CONTRARY TO THE MASTER'S PAYING CLIENT'S INTERESTS, THE ROMAN CATHOLIC CHURCH.**

36.     Master is a partner of the law firm of Ashford & Wriston. The Roman Catholic Church of Hawaii is the Master's paying client. **Exhibit 1, Ashford Wriston's website.** The Roman Catholic Church is one of the largest churches in the world. Master's status as a partner is highly influenced by his ability to attract and retain paying clients, such as the Catholic Church. Master may also represent other churches and religious advisors, furthering Master's conflict of interest.

37.     Recognizing the common law presumption that testamentary gifts to religious advisors is the product of undue influence is contrary to the financial interests of Master's client. Thus, the Master has a conflict of interest.

38.     *HRS §1-1* enactment in 1892 adopted common law from 1892 and earlier. With the enactment of *HRS §1-1*, Hawaii's Legislature adopted England's Statute of Mortmain and all case law prior to enactment of the statute is Hawaii's law.

39.     Incorporated in Hawaii law is *Thompson v. Hawks,* 14 F. 902; 1883 U.S. App. LEXIS 2553; 11 Biss. 440 which states, **"PRESUMPTION OF UNDUE INFLUENCE. The law presumes that undue influence has been used where a patient makes a will in favor of his physician, a client in favor of his lawyer, a ward in favor of his guardian, or any person in favor of his priest or religious adviser, or where other**

close confidential relationships exist." [Emphasis added][16] This is controlling law until the Hawaii legislature enacts a different law. Instead of relying on primary law, Master recites secondary law (treatises and cases after 1892) and argues the secondary law trumps Hawaii law. Even a first year law student knows primary law always prevails over secondary law. The key distinction is the confidential relationship that creates the presumption of undue influence, such as attorney / client, doctor / patient, and religious advisor / follower. After citing secondary law, the master then cites Hawaii caselaw that do not involve the confidential relationship. This creates the mistaken impression that the secondary law is Hawaii law. However, Hawaii's law is the English common law as enacted by the Hawaii legislature in *HRS §1-1*. **HRS §1-1 adopts English statutes as part of Hawaii's common law, such as England's Statute of Mortmain. *Dee v. Foster*, 21 Haw. 1 (1912).**

40.     **The key is the confidential relationship that create the presumption of undue influence.** The presumption is that gifts to parties in confidential relationships: attorney / client; doctor / patient; religious advisor / follower are presumed invalid as the product of undue influence, unless rebutted by the party.

41.     To rebut Hawaii's common law, Master cites *HRS § 560:3-407*. However, Master ignores an essential part of statute stating, "**Unless the burden of proof is changed by other provisions of law,** parties have the ultimate burden of persuasion as to matters with respect to which they have the initial burden of proof." **The key words are "unless the burden of proof is changed by other provisions of law." *HRS §1-1* and Hawaii's common law presumption is "other provisions of law" cited by the statute.** Furthermore, *HRS §1-1* adopted England's Statute of Mortmain which voids gifts to religious advisors. Master is ignoring the common law because the common law presumption is detrimental to the financial interests of his client, the Catholic Church. Master has a conflict of interest; Master as a neutral fact gatherer should avoid even the appearance of impropriety.

## SUMMARY OF OBJECTION

42.     Master ignored controlling Hawaii law that gift to a religious advisor is presumed the product of undue influence, instead relying upon secondary sources.

---

[16] *Thompson v. Hawks*, 14 F. 902; 1883 U.S. App. LEXIS 2553; 11 Biss. 440

43.     Eckankar Church failed to rebut presumption of undue influence by clear and convincing evidence.

44.     Master failed to follow statutory mandate to act as a neutral fact gather, instead Master performed little or no investigation and expected the facts to find him.

45.     Master has a conflict of interest; Master's acknowledging the common law presumption that a testamentary gift to a religious advisor is the product of undue influence would hurt his client's (the Catholic Church) financial interest.  The Roman Catholic Church is one of the largest religious institutions in the world.

Dated:  West Palm Beach, FL  **April 20, 2008**

**MARK YOUNG**
BENEFICIARY PRO SE

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that as of **April 20, 2008** I caused a true and correct copy of the foregoing document(s) to be delivered via First Class Mail to:

Ansara (Elsie) Sayers
P.O. Box 1267
Clotsbain, OR 97016

Maria Elizabeth Yust
6149 E Hawthorne St
Tucson, AZ 85711

Paul Henry Yust
5333 E. Rosewood St
Tucson, AZ 85711

Frank Kanemitsu, Esq.
Rinesmith & Sekiguchi
737 Bishop St #2775
Honolulu, HI 96813
    ATTORNEY FOR TRUST

Jason M. Tani, Esq.
Rush Moore, LLP
737 Bishop Street, Suite 2400
Honolulu, Hawaii 96813
    ATTORNEY FOR TRUSTEE, AS
AN INDIVIDUAL

Ronald R. Sakamoto
Char, Sakamoto
841 Bishop St #850
Honolulu, HI 96813
    ATTORNEY FOR HAWAII SAT
SANG SOCIETY (ECKANKAR CHURCH)

Dexter Higa, Esq.
Hirai, Lum, Tomita
220 S. King St #950
Honolulu, HI 96813
    ATTORNEY FOR KEITH YOUNG

Robert B. Graham, Jr., Esq.
Ashford & Wriston
P.O. Box 131
Honolulu, HI 96810
    COURT MASTER

John Chamberlin
P.O. Box 995
Southport, BC Queensland,
AUSTRALIA 4215

_____
**Mark Young**

1

# Ashford & Wriston

 *Fifty Years of Client Service*

About the Firm
Areas of Practice
Attorneys
Careers at A&W
A&W in the News
Contact Information

**Attorney Quick Search:**
Select an Attorney

**Areas of Practice:**
Select a Practice Area

## Robert Bruce Graham, Jr. : Partner  « Back to Attorney List

**Phone:** (808) 539-0440 • **Email:** bgraham@awlaw.com

**Areas of Practice:**
- Real Property
- Estate Planning

**Emphasizing:**
- Trust
- Commercial Leasing
- Land Title
- Real Estate Transactions
- Trust Administration
- Non-Profit Organizations

 Top-ranked in
CHAMBERS USA

**Robert Bruce Graham, Jr., a partner at Ashford & Wriston, began practicing law in 1973 and joined the firm in 1989.**

He is a member of the firm's management and compensation committees. Mr. Graham's practice focuses on commercial leasing, land title, real estate transactions, trust administration and nonprofit organizations. His experience includes:



- Counsel to the Roman Catholic Church In The State Of Hawaii.
- Representation of the Kamehameha Schools Bernice Pauahi Bishop Estate concerning trust law issues, property title and Hawaiian land rights.
- Representation of title companies and numerous Hawaiʻi landowners in matters concerning the determination of title, boundaries and appurtenant rights.

**Professional Activities:**
Mr. Graham is the author of "Title Matters" in Hawaiʻi Commercial Real Estate Manual (1988), "Legal Description and Title Search" in Hawaiʻi Conveyance Manual III (1992) and Hawaiʻi Conveyance Manual IV (2002) and "Traditional Hawaiian Land Law" in Hawaiʻi Real Estate Law Manual (1997). He is also co-author of Boundary Law in Hawaiʻi (1990) and an Adjunct Professor of Real Property Law at the University of Hawaiʻi School of Law. He is a frequent speaker concerning Hawaiian land law, water rights, and related matters. He has spoken at seminars sponsored by the Hawaiʻi Association of Land Surveyors, Hawaiʻi Association of Realtors, Hawaiʻi Developers' Council, Hawaiʻi Institute For Continuing Legal Education (HICLE), Hawaiʻi Real Estate Research and Education Center, Hawaiʻi Section of the International Right of Way Association (IRWA), Honolulu Board of Realtors, Institute of Real Estate Management (IREM), National Association of Industrial and Office Parks (NAIOP), Legislative Reference Bureau, Office of State Planning, University of Hawaiʻi College of Business Administration, and the Richardson School of Law. Mr. Graham has served as a director of the Real Property and Financial Services Section of the Hawaiʻi State Bar and as a Hawaiʻi bar examiner.

**Professional Recognition:**
Mr. Graham was selected as one of the best real estate lawyers in Hawaiʻi in The Best Lawyers in America, 1995 to present editions, and as one of the leading Hawaiʻi real property lawyers in America's Leading Lawyers for Business (Chambers USA), 2003 to present. He was inducted as a member of Lambda Alpha International Honorary Land Economics Society (Hawaiʻi Chapter) in 1998. Mr. Graham has received the Martindale-Hubbell "AV" rating.

**Community Activities:**

*Exhibit 1*

# Ashford & Wriston

*Fifty Years of Client Service*

### About the Firm
- Firm Profile
- Representative Clients
- Artwork

Areas of Practice

Attorneys

Careers at A&W

A&W in the News

Contact Information

**Attorney Quick Search:**

Select an Attorney ▼

**Areas of Practice:**

Select a Practice Area ▼

## Representative Clients

- Barnwell Industries
- Bank of Hawai'i
- Department of Hawaiian Homelands
- Finance Realty Co., Ltd.
- First Hawaiian Bank
- Ford Motor Credit Corporation
- Hawai'i Credit Union League
- Hawai'i Medical Services Association
- Hawai'i Reserves, Inc.
- Hawai'i State Federal Credit Union
- Kahua Ranch Limited
- Kamehameha Investment Corporation
- Kamehameha Schools
- Kaneohe Ranch
- Knudsen Trust

- McCandless Ranch
- Old Republic Title Company
- Parker Ranch
- Queen Lili'uokalani Trust
- The Queen Emma Foundation
- Queen's Medical Center
- State of Hawai'i
- Roman Catholic Church in the State of Hawai'i
- The Rehabilitation Hospital of the Pacific
- Territorial Savings & Loan Association
- Ticor Title Insurance Company
- Title Guaranty Escrow Services, Inc.
- Title Guaranty of Hawai'i Incorporated

Alii Place, Suite 1400, 1099 Alakea Street, Honolulu, HI 96813
Tel: (808) 539-0400 | Fax: (808) 533-4945 | Email: atty@aw.com

© 2000-2005 Ashford & Wriston, LLP. All Rights Reserved.
Legal Disclaimer | Internal